[Crim. No. 9587. In Bank. Mar. 15, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM JUNIOR CONLEY, Defendant and Appellant.

314

Robert Y. Bell for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

John W. Poulos as Amicus Curiae on behalf of Plaintiff and Respondent.

TRAYNOR, C. J.—Defendant appeals from a judgment of conviction entered on jury verdicts finding him guilty on two counts of first degree murder, finding him sane at the time of the commission of the crimes, and fixing the penalty on each count at life imprisonment. He contends that the court erred in instructing the jury on the elements of murder, in refusing to give requested instructions on manslaughter, and in admitting into evidence photographs of the victims.

Defendant shot and killed Clifton and Elaine McCool on Sunday, July 19, 1964, in Ukiah. The victims, who were married and the parents of three children, had recently reconciled after a period of separation and were preparing to move to the State of Washington. They occupied cabin No. 7 of a bungalow court near the home of defendant's sister, Goldie Haley, with whom defendant was living at the time of the killings. While the McCools were separated, Elaine became romantically involved with defendant and told him that she would get a divorce and marry him.

Defendant injured his back in an industrial accident several months before the killings and had no regular employment since that accident. On July 15, the Wednesday before the shooting, he received two compensation checks and, as was his habit when he had funds, began a prolonged period of steady drinking. He and several other witnesses testified that he drank whiskey, vodka, and finally wine continually for over three days before the homicides. Defendant also testified that he had been taking medication to relieve the pain of his back injury and an ulcer. A medical expert testified that some of the medication prescribed for defendant could have increased the effect of alcohol.

On Thursday, July 16, the defendant took Elaine and the McCool children on an outing and apparently engaged in intimate relations with Elaine. When he brought her and the children back to their cabin, she told him that she had decided to return to her husband.

On Sunday, July 19, defendant purchased a .30-.30 rifle and early that evening tried it out with two friends at a nearby dump. His friends testified that on their way back defendant said that he ought to kill the McCools, but they dismissed the remark as ''just the booze talking'' and changed the subject. Thereafter, defendant went to his sister's home and drank wine until about 9 p.m. He then went to cabin No. 3 of the bungalow court and told other friends who lived there that he was going to kill the McCools because, ''I have been hurt by three different women before. I can't take any more. She promised to marry me.'' They attempted to dissuade him, but he said he had made up his mind. Once again, however, he was not taken seriously and his friends allowed him to leave with his rifle.

A few minutes later, four shots rang out. Upon hearing the first shots, the occupants of cabin No. 1 went to their front porch and saw defendant shoot Elaine as she was running from him. Defendant walked back to cabin No. 3, told his friends that he had killed the McCools, and then went to his sister's house and told her what he had done. He left and was found two hours later in a nearby field.

Defendant testified that he did not intend to kill the McCools and remembered nothing from the time he was drinking at his sister's house until his arrest. The results of a blood alcohol test given about three hours after the shooting showed that his blood then contained .21 percent alcohol. A medical expert testified that this alcohol level would be sufficient to impair fine muscular coordination and judgment in the average individual and that if defendant had consumed no food or alcohol between 9 p.m. and midnight, the blood alcohol level at 9 p.m. could have been .27 percent, but that it might have been even less than .21 percent.

A defense psychologist testified that in his opinion defendant was in a dissociative state at the time of the killings and because of personality fragmentation did not function with his normal personality.

Both sides requested manslaughter instructions. The court ruled that even if initially there had been adequate provocation to reduce the killing from murder to manslaughter,

a sufficient cooling period had elapsed as a matter of law to preclude consideration of the crime as having been committed in the heat of passion. The court suggested that if either party could present an evidentiary theory upon which a manslaughter instruction could be based it would be given but ultimately refused any such instruction, although diminished capacity and intoxication were both suggested as theories upon which instructions on manslaughter were required. This refusal was prejudicial error.

It has long been settled that evidence of diminished mental capacity, whether caused by intoxication, trauma, or disease, can be used to show that a defendant did not have a specific mental state essential to an offense. Seventeen years ago, in *People* v. *Wells,* 33 Cal.2d 330 [202 P.2d 53], we held that evidence must be admitted that shows that at the time a defendant committed an overt act he did or did not have a specific mental state such as malice aforethought. By way of examples of the classes of crimes that require proof of a specific mental state we mentioned "the homicides, wherein, if a charge of murder in either degree is to be supported, there must be proof of malice aforethought; lacking proof of malice aforethought the homicide can be no higher offense than manslaughter." (*Id.,* at p. 346.) Section 22 of the Penal Code provided then, as it does now, that intoxication may be shown to negate an essential state of mind. We pointed out that in providing for the admissibility of such evidence in certain circumstances the statute "is but declaratory of what would be the rule were there no statute on the subject. . . . Thus the Legislature was at pains to insure that the [rule declaring no act less criminal because of voluntary intoxication] should not affect the general rule as to admissibility of evidence and necessity for proof relative to an essential specific state of mind." (*Id.* at p. 357.) We concluded, therefore, that evidence of an accused's abnormal mental condition that was relevant to malice aforethought was admissible, for malice aforethought was a "particular purpose, motive, or intent" essential to the crime charged. "Here, the offer was to show not insanity, not a lack of mental capacity to have malice aforethought, but, rather, the fact of nervous tension and that the particular tension was directly relevant to the issue of 'purpose, motive, or intent'; i.e., to the critical question as to whether defendant's overt act was done with 'malice aforethought'. . . ." (*Id.* at pp. 356-357.)

We thus clearly recognized that malice aforethought is a specific mental state and that a defendant may show that he

lacked that mental state when it is an essential element of the offense of which he stands accused. Since Wells had not committed a homicide, however, it remained for later cases to demonstrate the applicability of the general rule to the manslaughter-murder distinction. It is now urged by amicus curiae that evidence of diminished capacity can serve to reduce murder from first degree to second degree, but not to reduce murder to manslaughter, on the ground that the latter class of offenses is restricted to homicides having the specific statutory elements prescribed by Penal Code section 192.[1] This misunderstanding may have arisen from the statement in *People* v. *Danielly,* 33 Cal.2d 362 [202 P.2d 18], decided at the time of the *Wells* case, that "To reduce a homicide from the class of murder to that of manslaughter the evidence must be such as to reasonably lead the jury 'to believe that the defendant did, or to create a reasonable doubt in their minds as to whether or not he did, commit his offense under a heat of passion. . . .' " (*Id.,* at p. 377.) This statement, made in reference to evidence that the court found insufficient to establish "heat of passion," has been interpreted as limiting the rule of the *Wells* case to allow a showing only of impairment of a defendant's ability to premeditate or deliberate and thus reduce an offense from first degree to second degree murder. (See 22 So.Cal.L.Rev. 471, 473.) Read in its proper context the statement implies no such limitation, as *People* v. *Gorshen,* 51 Cal.2d 716 [336 P.2d 492], demonstrates.

In the *Gorshen* case we considered the specific question: can "evidence of a defendant's abnormal mental or physical condition (whether caused by intoxication, by trauma, or by disease, but not amounting to legal insanity or unconsciousness) . . . be considered to rebut malice aforethought and intent to kill in a case . . . where the prosecution evidence shows infliction of a mortal wound for the purpose of killing and the evidence does not show provocation which would meet the law's definition of voluntary manslaughter, . . ." (*Id.* at p. 731.) In resolving this question in the affirmative we overruled earlier cases that held that the question whether the

---

[1] Penal Code, section 192, provides: "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds:

"1. Voluntary—upon a sudden quarrel or heat of passion.

"2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

"3. In the driving of a vehicle— . . . ."

defendant was guilty of murder or manslaughter is to be decided solely on the basis of the reasonable man objective standard of provocation and also overruled those cases that held that voluntary intoxication could not be considered on the question whether the defendant is guilty of murder or manslaughter. ██ We thus gave effect to the statutory requirements for the offense of manslaughter, "the unlawful killing of a human being without malice," and recognized that since the statute had been enacted before the concept of diminished capacity had been developed, its enumeration of nonmalicious criminal homicides did not include those in which the lack of malice results from diminished capacity. That enumeration could not be exclusive, for in the absence of malice a homicide cannot be an offense higher than manslaughter. (*Jackson* v. *Superior Court,* 62 Cal.2d 521, 525 [42 Cal.Rptr. 838, 399 P.2d 374]; *People* v. *Wolff,* 61 Cal.2d 795, 819 [40 Cal.Rptr. 271, 394 P.2d 959]; *People* v. *Bender,* 27 Cal.2d 164, 180 [163 P.2d 8]; *People* v. *Holt,* 25 Cal.2d 59, 82 [153 P.2d 21]; *People* v. *Kelley,* 208 Cal. 387, 393 [281 P. 609].) ██ Accordingly, a finding of provocation sufficient to reduce murder to manslaughter is not the sole means by which malice can be negated and voluntary manslaughter established. A person who intentionally kills may be incapable of harboring malice aforethought because of a mental disease, defect, or intoxication, and in such case his killing, unless justified or excused, is voluntary manslaughter. (*People* v. *Henderson,* 60 Cal.2d 482, 490-491 [35 Cal.Rptr. 77, 386 P.2d 677]; *People* v. *Gorshen, supra,* 51 Cal.2d 716, 732; *People* v. *Bender, supra,* 27 Cal.2d 164, 180.)

In the present case the jury was instructed that "You should find Mr. Conley guilty of first degree murder if you are convinced beyond a reasonable doubt that any shooting of either of the McCools was deliberate and premeditated as [the court has] defined those terms and that Mr. Conley was conscious of the shooting at the time." The jury was not advised that malice was also an essential element of murder. ██ Defendant's plea of "not guilty" to the charge of first degree murder put in issue the existence of the mental states that are elements of that offense, namely, intent, deliberation, wilfulness, premeditation, and malice aforethought.[2] (*People*

---

[2]"Murder is the unlawful killing of a human being, with malice aforethought." (Pen. Code, § 187.) "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, . . . is murder of the first

v. *Henderson, supra,* 60 Cal.2d 482, 489; *People* v. *Modesto,* 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33]; *People* v. *Gorshen, supra,* 51 Cal.2d 716, 733; *People* v. *Wells, supra,* 33 Cal.2d 330, 347.) Accordingly, the introduction of any evidence deserving of consideration that defendant lacked any one of these mental states entitled him to an instruction as to the effect of this lack. (*People* v. *Modesto, supra,* 59 Cal.2d 722, 729; *People* v. *Carmen,* 36 Cal.2d 768, 772-773 [228 P.2d 281].) ■ ''[T]he defense of mental illness not amounting to legal insanity is a 'significant issue' in any case in which it is raised by substantial evidence. Its purpose and effect are to ameliorate the law governing criminal responsibility prescribed by the M'Naughton rule. . . . ■ Under the *Wells-Gorshen* rule of diminished responsibility even though a defendant be legally sane according to the M'Naughton test, if he was suffering from a mental illness that prevented his acting with malice aforethought or with premeditation and deliberation, he cannot be convicted of murder of the first degree . . . and where . . . substantial evidence sufficient to inform the court that defendant is relying upon the defense of diminished responsibility is received, it must on its own motion instruct the jury as to the legal significance of such evidence, for such an instruction is 'necessary for the jury to be fully and fairly charged upon the relevant law.' '' (*People* v. *Henderson, supra,* 60 Cal.2d 482, 490-491.)

■ Hoping to gain complete exculpation, defendant based his defense in part on a theory of unconsciousness. In support of that defense he introduced evidence of intoxication and mental illness and testified that he had no recollection of the shootings and did not intend to kill the McCools. Implicit in such a defense is also the defense of diminished capacity. The jury could well reject the claim of complete unconsciousness and yet believe that the evidence introduced to establish unconsciousness was sufficient to indicate that defendant's mental capacity was substantially reduced. Counsel for both sides made known to the court defendant's reliance on the defense of diminished capacity. ■ Since the jury was not advised that diminished capacity could negate the existence of malice and that if malice were absent the offense could not be murder, a material issue was withheld from its consideration. The denial of the right to have a significant issue deter-

degree; . . .'' (Pen. Code, § 189.) ''In every crime or public offense there must exist a union, or joint operation of act and intent, . . .'' (Pen. Code, § 20.)

mined by the jury is in itself a miscarriage of justice within the meaning of article VI, section 4½, of the Constitution and requires reversal. (*People* v. *Gilbert,* 63 Cal.2d 690, 703-704 [47 Cal.Rptr. 909, 408 P.2d 365].)

The Attorney General contends, however, that the jury necessarily determined this issue under the instructions given by finding defendant guilty of first rather than second degree murder. There is no merit in this contention, for the issue of malice aforethought was not presented to the jury. In the *Gorshen* case we emphasized that malice is a necessary element of both degrees of murder and that although a specific intent to kill is not a necessary element of second degree murder, it is of both first degree murder and voluntary manslaughter. We thus made it clear that the mental state existing when a defendant has a specific intent to kill is not necessarily the mental state known as malice aforethought. We also pointed out that when used in the statute defining murder that term imports something more than malice as defined in Penal Code section 7, subdivision 4, as "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, . . ." (*People* v. *Gorshen, supra,* 51 Cal.2d 716, 730.) In returning a verdict of first degree murder, the jury found that defendant's act was intentional, voluntary, deliberate, and premeditated. They did not necessarily find, however, that defendant acted with malice aforethought.

We have previously noted the difficulty of formulating a comprehensive definition of malice aforethought that will serve to distinguish murder and manslaughter. Penal Code section 188 provides that malice "may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." These provisions create a presumption of malice when the commission of a homicide by the defendant has been proved and place the burden on him to raise a reasonable doubt in the minds of the jurors that malice was present. (*Jackson* v. *Superior Court,* 62 Cal.2d 521, 526 [42 Cal.Rptr. 838, 399 P.2d 374].) The "conclusive presumption" of a malicious and guilty intent set forth in section 1962 of the Code of Civil Procedure offers no help to the jury. To bring it into operation the jury must find "the deliberate commission of an unlawful act for the purpose of injuring another," which involves subjective factors on which

evidence of diminished capacity is also relevant. (*People* v. *Gorshen, supra,* 51 Cal.2d 716, 731.) As noted above, the term imports something more than the definition given in section 7 of the Penal Code when used in statutes relating specifically to homicides. Indeed, section 7's definition of malice should not be read to a jury in a murder case. (*People* v. *Gorshen, supra,* 51 Cal.2d 716, 731; *People* v. *Chavez,* 37 Cal.2d 656, 666 [234 P.2d 632].)

The instructions given to the jury in the present case were phrased in language more meaningful to the average layman than the standard jury instructions in CALJIC. In attempting to adapt the CALJIC instructions to the facts of this case and to simplify the language, however, the court failed to define malice or instruct the jury that a finding of malice was essential to a verdict convicting the defendant of murder in either degree. " 'Malice aforethought is a term ordinarily used in connection with the felonious killing which is murder to designate it from manslaughter. The words do not imply deliberation or the lapse of considerable time between the malicious intent to take life and its actual execution, but rather denote *purpose* and *design* in contradistinction to accident and mischance. . . .' But this is not a sufficiently complete definition or test, for (a) voluntary and some kinds of involuntary manslaughter may in fact be committed with purpose and design, yet the law removes malice aforethought from all forms of manslaughter. . . ." (*People* v. *Gorshen, supra,* 51 Cal.2d 716, 730, fn. 11.) " '[M]alicious intent' is not synonymous with 'willful, deliberate, and premeditated' intent." (*People* v. *Holt,* 25 Cal.2d 59, 70 [153 P.2d 21].)

 The mental state constituting malice aforethought does not presuppose or require any ill will or hatred of the particular victim. (*People* v. *Bender, supra,* 27 Cal.2d 164, 180.) When a defendant " 'with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death,' " he acts with malice aforethought. (*People* v. *Washington,* 62 Cal.2d 777, 782 [44 Cal.Rptr. 442, 402 P.2d 130]; *People* v. *Thomas,* 41 Cal.2d 470, 480 [261 P.2d 1] [concurring opinion].) This mental state must be distinguished from that state of mind described as "wilful, deliberate, and premeditated," however. The latter phrase encompasses the mental state of one who carefully weighs the course of action he is about to take

and chooses to kill his victim after considering the reasons for and against it. (*People* v. *Robillard,* 55 Cal.2d 88, 95 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].) A person capable of achieving such a mental state is normally capable also of comprehending the duty society places on all persons to act within the law. ■■■ If, despite such awareness, he does an act that is likely to cause serious injury or death to another, he exhibits that wanton disregard for human life or antisocial motivation that constitutes malice aforethought.

■■■ An intentional act that is highly dangerous to human life, done in disregard of the actor's awareness that society requires him to conform his conduct to the law, is done with malice regardless of the fact that the actor acts without ill will toward his victim or believes that his conduct is justified. In this respect it is immaterial that he does not know that his specific conduct is unlawful, for all persons are presumed to know the law including that which prohibits causing injury or death to another. ■■■ An awareness of the obligation to act within the general body of laws regulating society, however, is included in the statutory definition of implied malice in terms of an abandoned and malignant heart and in the definition of express malice as the deliberate intention unlawfully to take life.

Thus, one who commits euthanasia bears no ill will toward his victim and believes his act is morally justified, but he nonetheless acts with malice if he is able to comprehend that society prohibits his act regardless of his personal belief. ■■■ If because of mental defect, disease, or intoxication, however, the defendant is unable to comprehend his duty to govern his actions in accord with the duty imposed by law, he does not act with malice aforethought and cannot be guilty of murder in the first degree. The situation of an individual who kills with intent, deliberation, and premeditation, but without malice aforethought is illustrated by the evidence in the *Gorshen* case. Had the trial court in that case believed the defendant's testimony, it might have concluded that he acted without malice when, after an altercation with his foreman and after consuming a large quantity of alcohol, he went to his home, got his pistol, fired a shot in his living room, drove back to his place of employment, and then after being searched by two police officers (who did not find his gun) and while still in their company shot the foreman. The psychiatric expert urged that because of personality disintegration and paranoic schizophrenia the defendant believed the act

necessary to prevent his own insanity and that the defendant was incapable of having the "mental state which is required for malice aforethought, or premeditation or anything which implies intention, deliberation, or premeditation." (*People* v. *Gorshen, supra,* 51 Cal.2d 716, 723.) The defendant had testified that he had forgotten about "God's laws and human's laws and everything else." (*Id.*) Confronted with this evidence, the court or a jury could conclude that the defendant killed intentionally, with premeditation and deliberation, but did not do so with malice aforethought. Although legally sane according to the M'Naughton test, such a defendant could not be convicted of murder if mental illness prevented his acting with malice aforethought. (*People* v. *Wolff,* 61 Cal.2d 795, 819 [40 Cal.Rptr. 271, 394 P.2d 959]; *People* v. *Henderson, supra,* 60 Cal.2d 482, 490.) Similarly in the present case, the jury could have found that although defendant deliberated and premeditated the killings, his intoxication and mental disorder precluded malice aforethought. In finding him guilty of first degree murder under the instructions given it therefore did not necessarily determine that he acted with malice aforethought.

Inasmuch as reversal is required and similar issues will undoubtedly be raised on retrial we deem it advisable to comment on the defendant's theory that unconsciousness would be a complete defense to the murder charge. The court instructed the jury in accord with this theory that "If you are convinced that William Conley shot either of the McCools, you will then have to decide whether such shooting occurred without the defendant William Conley, being conscious of the shooting. If he shot either of said persons without being conscious of the shooting, he would not be guilty of a crime, and your verdict as to any such shooting would be not guilty."

Defendant offered evidence of intoxication caused by alcohol and drugs to support his defense of unconsciousness. ▆▆▆▆ Unconsciousness is ordinarily a complete defense to a criminal charge. (Pen. Code, § 26, subd. Five.) If the state of unconsciousness is caused by voluntary intoxication, however, it is not a complete defense. Intoxication can so diminish a person's mental capacity that he is unable to achieve a specific state of mind requisite to a crime, but, even if it is sufficient to destroy volition, it cannot excuse homicide. (*People* v. *Baker,* 42 Cal.2d 550, 575 [268 P.2d 705].) ▆▆▆▆ Unconsciousness caused by voluntary intoxication is

governed by Penal Code section 22,[3] rather than section 26, and it is not a defense when a crime requires only a general criminal intent. (*People* v. *Gorshen, supra,* 51 Cal.2d 716, 727; *People* v. *Baker, supra,* 42 Cal.2d 550, 575; *People* v. *Sanchez,* 35 Cal.2d 522, 531 [219 P.2d 9].)　██　The union or joint operation of act and intent or criminal negligence must exist in every crime, including manslaughter (Pen. Code, § 20), and is deemed to exist irrespective of unconsciousness arising from voluntary intoxication.　██　An instruction that does not distinguish unconsciousness caused by voluntary intoxication from that induced by other causes is erroneous.[4]

It is urged that no instruction on manslaughter need be given when a defense of unconsciousness caused by voluntary intoxication is presented unless the defense is supported by ex-

---

[3]Penal Code section 22 provides: ''No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act.''

[4]In adapting its instructions to a case such as this in which diminished capacity and unconsciousness because of voluntary intoxication are relied on by the defense, the felony murder doctrine is not involved, and there is no evidence of poisoning, torture, or lying in wait, the court might advise the jury:

Murder is the unlawful killing of a human being with malice aforethought.

Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

The law prohibits acts highly dangerous to human life that cause serious injury or death, unless legal cause or excuse is shown. Malice aforethought, either express or implied, is manifested by the doing of such an act by a person who is able to comprehend this prohibition and his obligation to conform his conduct to it. There is a presumption that the defendant was able to understand this prohibition but he may rebut the presumption by evidence of diminished capacity on which I shall instruct you shortly. Malice does not require a pre-existing hatred or enmity toward the person injured.

All murder perpetrated by any kind of wilful, deliberate, and premeditated killing is murder of the first degree. (To be followed here by definitions of deliberation and premeditation as in customary instructions.)

Murder of the second degree must be distinguished not only from murder of the first degree, but also from manslaughter. Manslaughter shortly will be defined for you, and you will note that an essential feature of that offense, which distinguishes it from murder, is that the killing be done without malice.

If the unlawful killing of a human being is done with malice aforethought, but without deliberation and premeditation, that is, without the wilful, deliberate and premeditated intent to take life that is an

pert testimony regarding diminished capacity. ▉ Although expert testimony with regard to a defendant's inability to achieve a specific state of mind may be necessary when the defense of diminished capacity is based upon mental disease or defect, such testimony is not essential to a determination by a jury that a defendant has diminished capacity to achieve a specific state of mind because of intoxication. ▉ Nonexpert witnesses may offer opinion testimony based on their observations as to a person's intoxication (*People* v. *Monteith,* 73 Cal. 7, 9 [14 P. 373]) and the jury may infer the presence and extent of a defendant's intoxication from evidence of his behavior and the amount of his drinking. (Cf. *People* v. *Rittger,* 54 Cal.2d 720, 730 [7 Cal.Rptr. 901, 355 P.2d 645].)

essential element of first degree murder, then the offense is murder in the second degree.

The defendant has offered evidence that because of mental illness and intoxication he was unconscious. If you find that he was conscious of the shootings, but had substantially reduced mental capacity because of mental illness or intoxication, you must consider what effect, if any, this diminished capacity had on the defendant's ability to form any of the specific mental states that are essential elements of murder, which I have defined for you, or of manslaughter, which I will define shortly.

Thus, if you find that the defendant killed Mr. or Mrs. McCool while conscious and with malice, you will return a verdict of murder. If you find that this murder was committed wilfully, deliberately, and with premeditation, you will find the murder to be of the first degree. If you find, however, that the defendant's mental capacity was so diminished that he did not, or you have a reasonable doubt whether he did, premeditate, deliberate, or form an intent to kill, you will find the murder to be of the second degree.

Premeditation, deliberation, an intent to kill, and malice must be present for the killing to be first degree murder.

Malice is an essential element of either degree of murder. Therefore, if you find that the defendant did not harbor malice because of his diminished capacity, or have a reasonable doubt whether he harbored malice, you cannot find him guilty of a higher offense than manslaughter.

Manslaughter is the unlawful killing of a human being without malice. Two kinds of manslaughter, the definitions of which are pertinent here, are:

1. Voluntary manslaughter, an intentional killing in which the law, recognizing human frailty, permits the defendant to establish the lack of malice either by

a. Showing provocation such as to rouse the reasonable man to heat of passion or sudden quarrel. When such provocation is shown, the law will presume that the defendant who acts in the heat of passion or on sudden quarrel, acts without malice. I instruct you that as a matter of law no such provocation was shown to exist at the time of the killing of Mr. and Mrs. McCool. Or by

b. Showing that due to diminished capacity caused by mental illness, mental defect, or intoxication, the defendant did not attain the mental state constituting malice.

2. Involuntary manslaughter is a killing in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful

Defendant contends also that the trial court erred in admitting photographs of the bodies of Clifton and Elaine McCool on the ground that the prejudicial effect of the photographs outweighed any probative value they might have. The photographs are not inflammatory and are relevant to show the physical surroundings of the crime and the means by which the wounds were inflicted. The trial court did not abuse its discretion in determining that their probative value outweighed any possible prejudicial effect. (*People* v. *Harrison,* 59 Cal.2d 622, 627 [30 Cal.Rptr. 841, 381 P.2d 665].)

The judgment is reversed.

Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

MOSK, J.—I concur under compulsion of the first *Modesto* decision. (*People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].)

McCOMB, J.—I dissent. In my opinion there was no prejudicial error. Therefore, pursuant to the mandate of article VI, section 4½, of the Constitution of the State of California, the alleged error should be disregarded and the judgment affirmed.

Respondent's petition for a rehearing was denied April 27, 1966, and the opinion was modified to read as printed above. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.

---

act which might produce death, in an unlawful manner, or without due caution and circumspection.

Thus, if you find that the defendant killed while unconscious as a result of voluntary intoxication and was therefore unable to formulate a specific intent to kill or to harbor malice, his killing is involuntary manslaughter. The law does not permit him to use his own vice as a shelter against the normal legal consequences of his act. An ordinary and prudent man would not, while in possession of a dangerous weapon, permit himself to reach such a state of intoxication as to be unconscious of his actions.