Opinion
 

 KAUS, P. J.
 

 Defendant Carl Anders Eckstrom was charged with two counts of murder and one count of assault with a deadly weapon. He pleaded not guilty and not guilty by reason of insanity. After a court trial, defendant was found guilty as charged; the murder counts were fixed in the first degree.
 
 [1]
 
 It is evident that the conviction was not based on a felony-murder theory, but on express findings of deliberation and' premeditation. The trial court found defendant to be sane. In
 
 People
 
 v.
 
 *261
 

 Eckstrom,
 
 2d Crim. 25002, filed in February 1975, the court affirmed the judgment of conviction, but remanded the cause for a new sanity hearing.
 

 This time the issue of defendant’s sanity was tried to a jury, which found that he was sane at the time of the commission of all three offenses.
 

 On appeal, defendant contends that the rule that a defendant must prove his insanity by a preponderance of the evidence (e.g.,
 
 In re Franklin
 
 (1972) 7 Cal.3d 126, 141 [101 Cal.Rptr. 553, 496 P.2d 465]) denies him due process of law. There is no merit to that contention.
 

 Defendant recognizes that in
 
 Leland
 
 v.
 
 Oregon
 
 (1952) 343 U.S. 790, 794, 798-799 [96 L.Ed. 1302, 1306-1309, 72 S.Ct. 1002], the Supreme Court held that a state could, consistent with due process, require a defendant to prove his insanity, provided that the prosecutor is required to prove every element of the offense itself beyond a reasonable doubt. That is the California rule, as defendant recognizes. (E.g.,
 
 People
 
 v.
 
 Wells
 
 (1949) 33 Cal.2d 330, 350 [202 P.2d 53].) Defendant insists, however, that
 
 Leland
 
 is no longer good law, because the Supreme Court in
 
 In re Winship
 
 (1970) 397 U.S. 358, 365-366 [25 L.Ed.2d 368, 375-376, 90 S.Ct. 1068], held that the reasonable doubt standard applied in juvenile proceedings, and in
 
 Mullaney
 
 v.
 
 Wilbur
 
 (1975) 421 U.S. 684, 704 [44 L.Ed.2d 508, 522, 95 S.Ct. 1881], held that a state could not, consistent with due process, require a defendant to prove that a homicide was not a" murder. As Justice Rehnquist made clear in a separate concurring opinion in
 
 Mullaney
 
 (421 U.S. at p. 705 [44 L.Ed.2d at p. 523]), there is no inconsistency between
 
 Leland
 
 and
 
 Winship
 
 or
 
 Mullaney.
 
 In short, no new or evolving concepts of due process suggest that the burden imposed on a defendant to prove his insanity, after he has been found guilty of the crime charged, violates due process.
 

 To the contrary, if there is one class of persons accused of crime whose disadvantage in having to shoulder a burden in establishing insanity varies from zero to de minimis, it is California defendants charged with murder. The evidence of diminished capacity which such defendants may produce and thus require the prosecution to negative beyond a reasonable doubt, may so often overlap the issue of legal sanity under the
 
 M’Naughton
 
 standard, that defendant’s theory might in effect impose upon the prosecution the burden of proving its case twice. (See
 
 People
 
 v.
 
 Wolff
 
 (1964) 61 Cal.2d 795, 800-801, 821-822 [40 Cal.Rptr. 271, 394 P.2d
 
 *262
 
 959] [inability to appreciate quality of act evidence of either insanity or inability to premeditate];
 
 People
 
 v.
 
 Conley
 
 (1966) 64 Cal.2d 310, 322 [49 Cal.Rptr. 815, 411 P.2d 911] [inability to “comprehend duty to govern” actions evidence of either insanity or inability to harbor malice].)
 
 [2]
 

 Although the precise issue of a defendant’s sanity under the
 
 M’Naughton
 
 standard—whether defendant did not know or understand the nature and quality of his act, or was incapable of distinguishing right from wrong in relation to that act (e.g..
 
 People
 
 v.
 
 Kelly
 
 (1973) 10 Cal.3d 565, 574 [111 Cal.Rptr. 171, 516 P.2d 875])—can be raised only at the sanity trial, any relevant “evidence of mental pathology short of legal insanity is admissible to show lack of capacity” at the trial on the issue of guilt.
 
 (People
 
 v.
 
 Smith
 
 (1973) 33 Cal.App.3d 51, 74 [108 Cal.Rptr. 698].) Thus, the defendant has the opportunity at his guilt trial of raising the issue and requiring the People to negative beyond a reasonable doubt that he could not premeditate because he could not maturely and meaningfully reflect upon the gravity of his contemplated act (e.g.,
 
 People
 
 v.
 
 Wolff, supra,
 
 61 Cal.2d 795, 821), could not harbor malice (e.g.,
 
 People
 
 v.
 
 Wells, supra,
 
 33 Cal.2d 330, 343-344), express or implied
 
 (People
 
 v.
 
 Poddar
 
 (1974) 10 Cal.3d 750, 755 [111 Cal.Rptr. 910, 518 P.2d 342]), or otherwise could not form the specific mental state necessary to the crimes charged (e.g.,
 
 People
 
 v.
 
 McDowell
 
 (1968) 69 Cal.2d 737, 746-747 [73 Cal.Rptr. 1, 447 P.2d 97]), or, being unconscious, could not commit a crime at all (e.g.,
 
 People
 
 v.
 
 Sedeno
 
 (1974) 10 Cal.3d 703, 717 [112 Cal.Rptr. 1, 518 P.2d 913]).
 
 [3]
 

 In short, even if the rule imposing the burden of proving insanity on the defendant were unconstitutional, given
 
 M’Naughton
 
 as the relevant standard (but see
 
 People
 
 v.
 
 Kelley,
 
 10 Cal.3d 565, 578 [111 Cal.Rptr. 171, 516 P.2d 875], cone, opn.), the standing of a California defendant, convicted of premeditated murder, to raise that issue is, for practical purposes, nonexistent.
 

 
 *263
 
 Defendant also contends that the prosecutor committed prejudicial misconduct in cross-examining defendant’s expert. The specific instances, extracted from a reporter’s transcript of 1,100 pages, do not merit discussion.
 

 The judgment is affirmed.
 

 Stephens, J., and Hastings, J., concurred.
 

 A petition for a rehearing was denied July 21, 1977, and appellant’s petition for a hearing by the Supreme Court was denied August 25, 1977.
 

 [1]
 

 The skeletal facts are described In
 
 People
 
 v.
 
 Eckstrom
 
 (1974) 43 Cal.App.3d 996, 998 [118 Cal.Rptr. 391],
 

 [2]
 

 Consistent with the holding in
 
 Conley,
 
 CALJIC No. 8.11 informs California juries that implied malice must be accompanied by “an awareness of a duty imposed by law” not to commit certain acts. It has been observed that this concept is “practically identical to the traditional standard for legal insanity. . . . Only a medieval scholastic theologian could discover any substantial difference between a defendant incapable of comprehending his duty to obey the law and a defendant incapable of understanding the wrongfulness of his act.” (Johnson,
 
 The Accidental Decision and How It Happens
 
 (1977) 65 Cal.L.Rev. 231, 242.)
 

 [3]
 

 In addition, flying the banner of diminished capacity, the defendant can smuggle evidence of irrestible impulse into the guilt trial.
 
 (People
 
 v.
 
 Poddar, supra,
 
 10 Cal.3d 750, 758, fn. 12.)