[No. F020060. Fifth Dist. Jan. 6, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCIAL AGUIRRE, Defendant and Appellant.

[No. F021513. Fifth Dist. Jan. 6, 1995.]

In re MARCIAL AGUIRRE on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II. and III.

## Counsel

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert A. Anderson, Assistant Attorney General, Michael J. Weinberger and Janis Shank McLean, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ARDAIZ, P. J.**—Appellant was convicted of the attempted first degree murder of Officer Epifiano Cardenas of the Fresno Police Department. (Pen. Code, §§ 664, 187.) The attempted murder qualified as first degree murder on the basis that appellant had attempted a "willful, deliberate, and premeditated" killing of Cardenas. (Pen. Code, §§ 664, 189.)[1] It was not disputed that appellant had been drinking prior to firing his gun at Officer Cardenas, that a test of blood drawn from appellant approximately one hour after the incident revealed a blood-alcohol level of .22 percent, and that appellant was intoxicated when he shot at Officer Cardenas.

Appellant contends the court erred in instructing the jury with CALJIC No. 4.21.1 (1992 New) ("Voluntary Intoxication—Trial With General and

---

[1]Appellant was also convicted of other crimes which are not challenged on, and not pertinent to, this appeal. These were: assault with a firearm upon a peace officer (Pen. Code, § 245, subd. (d)(1), count 2); three counts of false imprisonment (Pen. Code, § 236, counts 5, 7 and 9); and possession of a firearm by a convicted felon (Pen. Code, § 12021, count 11). He was acquitted on one count of assault with a firearm (count 3). Three additional counts of assault with a firearm and one count of burglary were dismissed during trial, upon motion of the prosecutor, for insufficiency of the evidence.

Specific Intent Crimes"). He also contends he was denied effective assistance of counsel because, inter alia, his trial counsel did not propose any "pinpoint instruction" expressly telling the jurors they could consider appellant's voluntary intoxication in determining whether appellant acted with premeditation and deliberation in firing his gun at Cardenas.

He has also filed a petition for writ of habeas corpus which raises the same effective assistance issues as those raised in his appeal.

In the published portion of this opinion we address appellant's contention that the court erred in instructing the jury with CALJIC No. 4.21.1 (1992 New). We conclude there was no error.

In the unpublished portion of our opinion we address and reject appellant's contention that he was denied effective assistance of counsel.

FACTS

On June 29, 1992, at approximately 1:15 p.m., appellant, Marcial Aguirre, arrived at the apartment of Maria Ortiz on East Iowa in Fresno. Ms. Ortiz was home with her 21-year-old and 13-year-old daughters, and her 12-year-old son. Ms. Ortiz and appellant had previously been involved in a relationship. Appellant was in violation of his parole and there was a felony warrant out for his arrest.

When appellant arrived at the apartment, he appeared to be under the influence of alcohol. During the visit, appellant misplaced his car keys, became agitated, and accused Ms. Ortiz's 13-year-old daughter of taking his keys and wallet. Appellant went out to his car, removed a .38-caliber semiautomatic handgun from the waistband of his pants, and began loading it. While outside, he discharged the pistol several times.

Ms. Ortiz tried to lock appellant out of her apartment, but he gained access through a window. When a neighbor knocked at the door, appellant thought it was police and said, "you are not going to take me alive." He pointed the gun at the door. The person at the door was actually a neighbor trying to help the family. She distracted appellant while the family fled the apartment.

Officer Cardenas arrived and approached appellant from behind. When Cardenas was 20 to 30 feet away, he identified himself as a police officer. He ordered appellant to put his hands up. Appellant said, "I ain't going to go to jail alive" or "I won't be taken just like that." Appellant turned, drew his gun from his waistband and pointed it at Officer Cardenas. Appellant and

Cardenas fired their guns almost simultaneously. The officer shot nine times before appellant fell to the ground, and appellant fired once before his gun jammed. The officer was not struck, but appellant was struck seven times. Appellant continued to point the gun at Cardenas even after appellant was wounded and lying on the ground.

## I.

## CALJIC No. 4.21.1

In *People* v. *Saille* (1991) 54 Cal.3d 1103 [2 Cal.Rptr.2d 364, 820 P.2d 588], the California Supreme Court recounted the history of the so-called "diminished capacity" defense in California, and then explained this defense was legislatively abolished by the enactment in 1981 of Senate Bill No. 54. The court stated:

"Senate Bill No. 54 added to the Penal Code sections 28 and 29, which abolished diminished capacity and limited psychiatric testimony. It amended section 22 on the admissibility of evidence of voluntary intoxication, section 188 on the definition of malice aforethought, and section 189 on the definition of premeditation and deliberation. Other sections not relevant here were also amended.

"Section 28, subdivision (a) provides in pertinent part that evidence of mental illness 'shall not be admitted to show or negate the *capacity* to form any mental state,' but is 'admissible solely on the issue of whether or not the accused *actually formed* a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.' (Italics added.) Subdivision (b) of section 28 abolishes the defenses of diminished capacity, diminished responsibility, and irresistible impulse 'as a matter of public policy.'

"Section 29 provides that any expert testifying in the guilt phase of a criminal action 'shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to, purpose, intent, knowledge, or malice aforethought, for the crimes charged. The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact.'

"Section 22 was amended to reflect the abolition of diminished capacity. It provides that evidence of voluntary intoxication is not admissible to negate the capacity to form any mental state, but it is admissible 'solely on the issue of whether or not the defendant actually formed a required specific

intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.'

"A provision abolishing the defense of diminished capacity was also included in the initiative measure adopted in June 1982 and known as Proposition 8. Section 25 was added to the Penal Code as part of Proposition 8. Subdivision (a) of section 25 provides: 'The defense of diminished capacity is hereby abolished. In a criminal action, as well as any juvenile court proceeding, evidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate capacity to form the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged.'

"Although there was initially some confusion about the interaction between section 25, subdivision (a) and section 28 (*People* v. *Spurlin* (1984) 156 Cal.App.3d 119, 128 . . .), courts and commentators now appear to agree that the two sections are complementary and that both statutes remain operative. (See 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 211, pp. 241-243; *People* v. *McCowan* (1986) 182 Cal.App.3d 1, 11-13 . . . ; *People* v. *Young* (1987) 189 Cal.App.3d 891, 904-905 . . . .)" (*People* v. *Saille, supra*, 54 Cal.3d at pp. 1111-1112, fn. omitted.)

In *Saille* the defendant was convicted of first degree murder. In *Saille*, as in the present case, the court instructed the jury that voluntary intoxication could be considered in determining whether the defendant had the specific intent to kill. The defendant contended on appeal, however, that the trial court had erred because the trial court "should have instructed sua sponte that the jury could consider his voluntary intoxication in determining whether he had premeditated and deliberated the murder." (*People* v. *Saille, supra*, 54 Cal.3d at p. 1108.) The *Saille* court rejected this contention. The court stated:

"When voluntary intoxication became subsumed by diminished capacity, it was treated as a part of the defense of diminished capacity. (See, e.g., *People* v. *Gorshen* [1959], *supra*, 51 Cal.2d [716] at p. 727 [336 P.2d 492]; *People* v. *Conley* [1966], *supra*, 64 Cal.2d 310 [49 Cal.Rptr. 85, 411 P.2d 911].) The withdrawal of diminished capacity as a defense removes intoxication from the realm of defenses to crimes. Intoxication is now relevant only to the extent that it bears on the question of whether the defendant actually had the requisite specific mental state. Thus it is now more like the 'pinpoint' instructions discussed in *People* v. *Sears* (1970) 2 Cal.3d 180, 190. . . , and *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 885 . . . , to

which a defendant is entitled upon request. Such instructions relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case, such as mistaken identification or alibi. (See *People* v. *Rincon-Pineda, supra,* 14 Cal.3d at p. 885.) They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte." (*People* v. *Saille, supra,* 54 Cal.3d at p. 1119.)

In both *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913] (disapproved on another ground in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]) and *People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390], the court stated: "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." *Saille* held an instruction relating evidence of intoxication to premeditation and deliberation was not such a "general principle of law" and was not required to be given sua sponte. The *Saille* court stated:

"Thus, even if there were a duty on the trial court to instruct sua sponte on voluntary intoxication when the defense of diminished capacity existed, we do not believe that it is reasonable for such a duty to continue after abolition of the diminished capacity defense.

"In our view, under the law relating to mental capacity as it exists today, it makes more sense to place on the defendant the duty to request an instruction which relates the evidence of his intoxication to an element of a crime, such as premeditation and deliberation. This is so because the defendant's evidence of intoxication can no longer be proffered as a defense to a crime but rather is proffered in an attempt to raise a doubt on an element of a crime which the prosecution must prove beyond a reasonable doubt. In such a case the defendant is attempting to relate his evidence of intoxication to an element of the crime. Accordingly, he may seek a 'pinpoint' instruction that must be requested by him (See 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2925, pp. 3586-3587), but such a pinpoint instruction does not involve a 'general principle of law' as that term is used in the cases that have imposed a sua sponte duty of instruction on the trial court. The court did not err, therefore, in failing to instruct sua sponte." (*People* v. *Saille, supra,* 54 Cal.3d at p. 1120.)

CALJIC No. 4.21.1 (1992 New) is an instruction on the legal significance of voluntary intoxication as explained in *Saille*. It combines elements of

CALJIC No. 4.20 (1992 rev.) ("Voluntary Intoxication—Not a Defense to General Intent Crimes") and CALJIC No. 4.21 (1992 rev.) ("Voluntary Intoxication—When Relevant to Specific Intent"). In the present case, the trial judge's CALJIC No. 4.21.1 instruction to the jury was as follows:

"Under the law, it is the general rule that no act committed by a person while in a state of voluntary intoxication is less criminal by reason of being in such condition. Thus in the crimes charged in Counts Two, Three, Five, Seven, Nine and Eleven, the fact that the defendant was voluntarily intoxicated is not a defense and does not relieve defendant of responsibility for the crime. This rule applies in this case only to the crimes of which I have just enumerated. That is Counts[] Two, Three, Five, Seven, Nine and Eleven.

"However, there is an exception to this general rule. That is where a specific intent is an essential element of the crime. In such event, you should consider the defendant's voluntary intoxication in your determination of whether the defendant possessed the required specified intent at the time of the commission of the alleged crime.

"Thus in the crime charged in Count One, attempted murder, a necessary element is the existence in the mind of the defendant of a certain specific intent which is included in the definition of the crimes set forth under the instructions that pertain to Count One.

"If the evidence shows that the defendant was intoxicated at the time of the alleged crime, you should consider that fact in determining whether or not such defendant had such specific intent. If from all of the evidence you have a reasonable doubt whether the defendant had such specific intent, you must find the defendant did not have such specific intent."

Appellant raised no objection in the trial court to the giving of this instruction. However, as appellant points out, Penal Code section 1259 provides in relevant part, "The appellate court may . . . review any instruction given . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (In accord, see *People* v. *Hannon* (1977) 19 Cal.3d 588, 600 [138 Cal.Rptr. 885, 564 P.2d 1203], and *People* v. *Croy* (1985) 41 Cal.3d 1, fn. 6 at p. 12 [221 Cal.Rptr. 592, 710 P.2d 392].)

Appellant contends the court's instructing of the jury with CALJIC No. 4.21.1 violated his substantial rights because the instruction (1) erroneously told the jury there was an exception to the general rule that voluntary intoxication is not a defense, (2) was confusing, and (3) "violated the

California and United States due process clauses as a burden-shifting presumption." We do not agree.

## A. *The instruction did not tell jurors that intoxication is a complete defense.*

The first sentence of the instruction set forth the "general rule" that "no act committed by a person while in a state of voluntary intoxication is less criminal by reason of being in such condition." The second sentence applied that general rule to the general intent crimes charged in counts other than count one (attempted first degree murder), and stated voluntary intoxication "is not a defense" to those alleged crimes. The third and fourth sentences repeated that the general rule applied to counts other than count one. The fifth sentence then stated "there is an exception to this general rule . . . ." The first of appellant's three purported flaws in the instruction, as we understand it, is that the words "there is an exception to this general rule" imply (erroneously) there may be instances in which the mere fact a defendant is intoxicated constitutes a complete defense to an alleged crime, regardless of what the defendant's mental state is. In other words, voluntary intoxication equals no crime committed. We reject this argument for two reasons.

First, if the jury had been under the impression that the mere existence of voluntary intoxication constituted a complete defense to the alleged attempted first degree murder, appellant's substantial rights would not have been affected. Rather, he would have been acquitted of the charge. It was not disputed appellant was intoxicated. The prosecutor stated in her closing argument: "And there is no injustice in holding this defendant responsible for the acts he committed against Epi Cardenas while he was voluntarily intoxicated. He was not so intoxicated as to negate the intent to kill, premeditate and deliberate." Both the prosecution and the defense agreed with expert testimony that appellant's blood-alcohol level, measured at .22 percent shortly after the shooting, was an even higher .24 percent at the time of the shooting.

Second, the "exception to this general rule" is then explained in the instruction itself. The exception is not that sometimes the existence of voluntary intoxication is a complete defense to the alleged crime, regardless of the defendant's mental state. Rather, the exception is that "you should consider the defendant's voluntary intoxication in your determination of whether the defendant possessed the required specific intent at the time of the commission of the alleged crime."

B. *The instruction was not confusing.*

Appellant's second purported flaw in the instruction is it is "confusing." In support of this argument, he calls our attention to two other instructions found to be confusing in *People* v. *Ford* (1964) 60 Cal.2d 772 [36 Cal.Rptr. 620, 388 P.2d 892], and then makes the conclusory argument that we should therefore find CALJIC No. 4.21.1 to be confusing as well. The weakness in this argument is that although the *Ford* instructions may have been confusing, CALJIC No. 4.21.1 is a totally different instruction and is not confusing. Each of the two instructions disapproved in *Ford* was self-contradictory. One stated:

" 'No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act.

" 'However, if you find that prior to the killing . . . the defendant voluntarily resorted to the use of intoxicants then the law does not permit him to use his own vice as a shelter against the normal, legal consequences of his conduct.' " (*People* v. *Ford*, *supra*, 60 Cal.2d at p. 796, fn. 12.)

The other *Ford* instruction stated:

" 'No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act.

" 'The rule of law is that when a person in a state of intoxication, voluntarily produced by himself, commits a crime, he shall not be permitted to use his own vice as a shelter against the normal legal consequences of his conduct. (Even temporary insanity caused by intoxication does not destroy responsibility if the person, when sane and responsible, voluntarily brought on the intoxication.)

" 'Hence voluntary intoxication, although evidence of such may throw light on an occurrence and aid in determining what took place, is not of itself

either an excuse for the commission of crime or a defense to a charge of crime. But if and when the proof shows that the defendant unlawfully killed a human being, and if the evidence also shows that at the time of the mortal assault the defendant was intoxicated, or, in common language, that he was drunk, the jury is permitted and ought to consider such evidence of drunkenness, but for one purpose, namely, in determining the degree of the crime. The weight to be given that evidence is a matter for the jury to decide in connection with its consideration of all other evidence pertinent to the question of degree of the offense.' " (*People* v. *Ford, supra*, 60 Cal.2d at p. 796, fn. 13.)

Each of the *Ford* instructions sets forth the same general rule that now appears in the first sentence of CALJIC No. 4.21.1. The second sentence of each of the *Ford* instructions then made a statement which contradicted the first sentence, and did so without stating that the second sentence was an exception to the rule set forth in the first sentence. But CALJIC No. 4.21.1 does not have this problem. It states a general rule, states that the general rule is in fact a general rule, states that there is an exception to the general rule, and then states what that exception is. The confusion inherent in the *Ford* instructions is simply not present in CALJIC No. 4.21.1.

C. *The instruction did not require appellant to prove his innocence.*

■ Appellant's third argument as to why CALJIC No. 4.21.1 violated his substantial rights is alternately stated as follows: the instruction "violated the California and United States due process clauses as a burden-shifting presumption"; and the jurors "could reasonably have interpreted the instruction as directing the jurors to find specific intent and as shifting the burden of persuasion to the 'defense' unless defendant proved intoxication by a sufficient quantum of proof to invoke an exception to the general rule that voluntary intoxication was not a defense." This argument fails because nothing in CALJIC No. 4.21.1 even remotely suggests the jurors were obligated, required or directed to find that appellant acted with specific intent. To the contrary, it told them that "[i]f from all of the evidence you have a reasonable doubt whether the defendant had such specific intent, you must find the defendant did not have such specific intent."

The jurors were also instructed that in order to find appellant guilty of attempted murder, they had to find he "harbored express malice aforethought, namely a specific intent to kill unlawfully another human being." They were instructed that the defendant's presumption of innocence "places upon the State and the People the burden of proving him guilty beyond a reasonable doubt" and "each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt including the required specific intent must be proved beyond a reasonable doubt." They

were further instructed, "if the circumstantial evidence as to any particular count including evidence as to the existence of any requisite specific intent is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence or one interpretation points to the existence of requisite specific intent and the other to the absence therefore [sic], it is your duty to adopt that interpretation which points to the defendant's innocence and reject the interpretation which points to his guilt." Neither CALJIC No. 4.21.1 nor any other instruction directed the jurors to find appellant acted with a specific intent to kill Cardenas. Rather, the jury was properly instructed that the People had the burden of proving, beyond a reasonable doubt, that appellant acted with an intent to kill.

Appellant calls our attention to *United States* v. *Scott* (D.C. Cir. 1975) 529 F.2d 338 [174 App.D.C. 96], a case in which the jury was given an instruction which stated in part, "*drunkenness may be shown to prove mental incapability to form the specific intent.*" (*Id.* at p. 340.) The court found the instruction "might well have been understood as shifting the burden of proof to the defendant" and reversed the defendant's conviction for entering a bank with intent to rob. (18 U.S.C. § 4208(a)(2)). (*United States* v. *Scott, supra,* 529 F.2d at p. 340.) In the present case, however, CALJIC No. 4.21.1 did not instruct the jury that appellant had to "prove" any mental incapability to form an intent to kill. *Scott* is therefore easily distinguishable and does not help appellant.

Appellant's substantial rights were not violated by the giving of CALJIC No. 4.21.1.

## II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . .

## IV.

### DISPOSITION

The judgment is affirmed. The petition for writ of habeas corpus is denied.

Dibiaso, J., and Vartabedian, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 12, 1995.

---

*See footnote *ante*, page 391.