## (December 18, 1962)

 The People of the State of New York, Respondent, v. James Davis, Appellant.

Memorandum by the Court. Judgment convicting defendant of murder, second degree, affirmed. The record amply sustains the jury's verdict. Defendant fled the scene of the crime, threw away the knife which he had carried in his pocket with the blade open and gave a false explanation to the police officer. Ten knife wounds in the chest and abdomen of the decedent, some of which penetrated vital organs, demonstrate the design to kill. The dissenting opinion outlines an ideal charge in the situation presented. Doubtless, the charge given would have been improved had it more nearly approximated this model. That is not to say, however, that the court's charge was not adequate to define the issues and present them clearly. The charge in its entirety was eminently fair. It included appropriate instruction in respect of the legal effect of intoxication and the jury thereby was enabled to acquit or find the defendant guilty of murder, second degree, or manslaughter, first degree. Defendant did not except to or make any requests in the light of the charge. On this appeal defendant does not claim error in the charge on the effect of voluntary intoxication, which gave the defendant the benefit of the entire sweep of

section 1220 of the Penal Law. The court charged: "If you should determine that the defendant was intoxicated and that such intoxication prevented the presence of an intent to kill, then you must acquit defendant of the crime of murder in the second degree. On the other hand, if you are satisfied beyond a reasonable doubt that the defendant was not intoxicated or that if intoxicated his state of intoxication did not prevent the presence of an intent to kill, then you may consider whether or not you are satisfied beyond a reasonable doubt that the defendant had an intent to kill the deceased in connection with your consideration of the crime of murder in the second degree." The charge read in its entirety does not support the premise that the jury thereby was confronted with the dilemma of either acquitting the defendant or finding him guilty of murder, second degree. The plain meaning of the charge was that intoxication, if found, could support a finding of absence of an intent to kill enabling the jury to acquit defendant of murder, second degree. In addition, the court expressly charged the elements of manslaughter, first degree, and emphasized that it differed from murder, second degree, in that the intent to kill need not be present. There is no suggestion of confusion on the part of the jurors. Throughout the charge reference was made repeatedly to the alternative verdict of manslaughter, first degree. Their awareness of the distinction between murder, second degree, and manslaughter, first degree, is evident from their request for definitions of the two crimes and for the definition of intent which were complied with. It may be that the instructions on justifiable and excusable homicide were not indicated on this record. Nevertheless, the defendant does not claim prejudice by reason thereof and the record does not arguably suggest it.

VALENTE, J. (dissenting). I would modify the judgment of conviction for murder in the second degree by reducing the degree of crime of which appellant was convicted to manslaughter, first degree, and by imposing sentence therefor of 15 to 30 years (which includes 5 to 10 years under section 1897 of the Penal Law); and as so modified, I would affirm the judgment.

As I read the charge to the jury in this case, it was lacking in sufficient clarity and definiteness on the issue of the effect of the alleged intoxication of defendant at the time of the commission of the crime and the consideration to be given by the jury to a finding of intoxication on the degree of homicide upon which defendant could be convicted.

Section 1220 of the Penal Law provides: "No act committed by a person while in a state of voluntary intoxication, shall be deemed less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act."

The necessary elements of a proper charge to a jury, when intoxication is an issue in a case, are plainly set forth in People v. Koerber (244 N. Y. 147), People v. Crumble (286 N. Y. 24), and People v. Leonardi (143 N. Y. 360).

On this record, there is no doubt that appellant killed the deceased. But there is substantial evidence as to the quantity of intoxicating beverages imbibed by defendant during a period immediately preceding the homicide. Thus, the evidence presented a serious question for the jury as to defendant's ability to formulate the necessary intent to kill to justify a conviction of murder, second degree. Under such circumstances, defendant was entitled to a clear charge that would in unmistakable language delineate the courses of action the jury might follow. The charge in the instant case fell short of the minimal requirements to sustain the conviction.

The emphasis throughout the instructions herein was that the jury were to acquit defendant of the charge of murder, second degree, if they "should determine that the defendant was intoxicated and that such intoxication prevented the presence of an intent to kill". Such instructions could only mean to the jury that if reasonable doubt was entertained as to the ability of the defendant to form the necessary intent because of his intoxication, then there must be an acquittal.

But acquittal was not the proper alternative. The appropriate instruction should have been that if reasonable doubt was entertained on the issue of intent because of the intoxication, the jury might find defendant guilty of a lesser degree of homicide, such as manslaughter, first degree, in which no proof of an intent to kill was necessary. (See *People* v. *Koerber, supra.*) It must fairly be presumed that, upon the facts of this case, when the jury was presented with the alternative of conviction for murder, second degree, or acquittal, upon the issue of intoxication, the jury could hardly, in good conscience, choose a verdict of not guilty; and, as a consequence, the question of the effect of the intoxication must have been given only perfunctory consideration.

While the jury was instructed on the elements of the crime of manslaughter, first degree, in a separate portion of the charge, there was no attempt to relate that instruction to the crime charged in the indictment nor to the issue of intoxication. The charge as to lesser degrees of homicide cannot be read in isolation but must be read in context with due regard to its order of sequence in the instructions. There was no attempt to connect the phase of the charge as to manslaughter with that portion dealing with the effect of intoxication upon the element of intent. The jury's attention should have been specifically directed to the correlation between these as facets of the case.

The jury should have been instructed first to determine whether they were satisfied, beyond a reasonable doubt, that defendant killed the deceased, and then, if so satisfied, whether he was guilty of murder, second degree or manslaughter, first degree, depending upon how they found on the question of intoxication. On the latter problem, the defendant was entitled to a definite instruction that since a specific intent was required to establish murder, second degree, that if they found — or entertained a reasonable doubt on that question — that the mind of the defendant was so obscured by drink that he was incapable of forming the intent, the evidence would justify a reduction of the degree of crime to manslaughter, first degree, which is a homicide "committed without a design to effect death" (Penal Law, § 1050). Defendant was also entitled to an instruction that it was not essential that he be totally intoxicated, but that any degree of intoxication might be considered by the jury in determining the issue of absence of intent, and that the question was not whether defendant had taken any alcoholic liquor but whether his drinking of the liquor produced a state of mind of such character as to destroy his power to form the intent necessary to constitute the crime of murder, second degree. The failure, in this case, to so charge, in my opinion deprived the defendant of a fair consideration of a substantial issue.

The failure to charge with sufficient clarity on the question of intent, and the effect of the defendant's intoxication in determining the degree of homicide insofar as the intoxication affected the specific intent, does not present solely an academic problem in this case. The record indicates that a few hours after the jury had retired for their deliberation, they requested the court to give them a "definition of murder in the second degree, definition of manslaughter in the first degree, definition of intent to kill". In response to that request, the court instructed the reporter to "read that portion of the Court's charge giving the definition of murder in the second degree and manslaughter in the first degree

and also that portion of the Court's charge defining intent". There is no way of telling from the record what was then read to the jury. The consequence may well have been to emphasize the defects in the charge heretofore noted.

It might be noted, too, that the charge was unnecessarily complicated by instructions as to justifiable and excusable homicide which were issues not presented in this case. (See *People* v. *Wright*, 17 A D 2d 151.) Abstract propositions of law, unrelated to the evidence in a case, should not be charged to a jury since the effect can only be one of confusing the jury and leading to an improper verdict. (See *People* v. *Manning*, 7 A D 2d 1008.)

In *People* v. *Johnson* (6 A D 2d 181) BERGAN, J., speaking for this court said (p. 183) : " The duty rests on the Trial Judge to give adequate and balanced instructions to the jury in a criminal case; and if the failure to do this is of sufficient importance, an Appellate Division under its express power of review on appeal ' whether any exception shall have been taken or not ' (Code Crim. Pro., § 527) will examine the charge to the jury to determine if the duty of adequate guidance to the jury has been substantially met."

Although the charge to the jury was inadequate, I would not reverse the judgment of conviction and order a new trial, but in accordance with section 543 of the Code of Criminal Procedure, would modify the judgment by reducing the degree of crime of which defendant was convicted to manslaughter, first degree — which is well warranted by the record. I would impose sentence on the defendant of a minimum of 10 years to a maximum of 20 years, and under section 1944 of the Penal Law, I would make a finding on this record that defendant was armed with a weapon specified in section 1897 of the Penal Law, to wit, a knife, and would increase the sentence by not less than 5 nor more than 10 years, making a total sentence of from 15 to 30 years. (See *People* v. *May*, 9 A D 2d 508.)

Botein, P. J., McNally, Stevens and Steuer, JJ., concur in Memorandum by the Court; Valente, J., dissents in opinion.

Judgment convicting defendant of murder, second degree, affirmed.