PEOPLE v LANGWORTHY

PEOPLE v LUNDY

Docket Nos. 65320, 65480. Argued January 5, 1982 (Calendar Nos. 4, 5).—Decided December 23, 1982.

Dean V. Langworthy was convicted in the Washtenaw Circuit Court, Henry T. Conlin, J., of second-degree murder. The defendant had been charged with first-degree murder and had offered voluntary intoxication as a defense. The Court of Appeals, D. C. Riley, P.J., and R. B. Burns and N. J. Kaufman, JJ., affirmed in an unpublished opinion per curiam, holding that second-degree murder is not a specific-intent crime and that voluntary intoxication is not a defense (Docket No. 78-4674).

Roy L. Lundy, Jr., was found in a bench trial in the Recorder's Court of Detroit, Leonard Townsend, J., to be guilty but mentally ill of three counts of first-degree criminal sexual conduct. The trial court rejected a defense of intoxication, ruling that first-degree criminal sexual conduct is a general-intent crime. The Court of Appeals, R. B. Burns, P.J., and J. H. Gillis and D. C. Riley, JJ., affirmed in a memorandum opinion (Docket No. 46733).

Both defendants appeal, arguing that the category of specific-intent crimes should include first-degree criminal sexual conduct and second-degree murder, thus making available the defense of voluntary intoxication.

In an opinion by Chief Justice Fitzgerald, joined by Justices Williams, Coleman, and Ryan, the Supreme Court *held:*

The defense of voluntary intoxication is not available to

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 155.

Effect of voluntary drug intoxication upon criminal responsibility. 73 ALR3d 98.

Modern status of the rules as to voluntary intoxication as defense to criminal charge. 8 ALR3d 1236.

[2] 65 Am Jur 2d, Rape § 35.

[3, 5] 40 Am Jur 2d, Homicide §§ 129, 131, 458.

[4] 21 Am Jur 2d, Criminal Law §§ 4, 130, 131, 135.

[6] 65 Am Jur 2d, Rape § 1.

[7] 65 Am Jur 2d, Rape § 2.

What constitutes penetration in prosecution for rape or statutory rape. 76 ALR3d 163.

charges of first-degree criminal sexual conduct or second-degree murder because both are crimes of general intent.

1. Where a specific intent is a necessary element of a crime, voluntary intoxication may negate the intent, but where only a general intent is required, voluntary intoxication is not available as a defense.

2. Rape is not a specific-intent crime. The overwhelming weight of authority is that rape is a general-intent crime. The Legislature did not intend to include specific intent as an element of first-degree criminal sexual conduct. Neither the statute nor the statutory definition of sexual penetration contains any language regarding intent. Had the Legislature wanted to add specific intent as an element, knowing that the predecessor statute had been consistently construed as punishing a general-intent crime, it would have done so specifically. The fact that it did not leads to the conclusion that the Legislature intended to maintain the general rule that no intent is requisite other than that evidenced by the doing of the acts constituting the offense, *i.e.,* general intent. Moreover, one of the purposes of the statute was to strengthen the laws against sexual violence by removing evidentiary obstacles to the prosecution of sexual assault, and it is unlikely that a new element of proof would be added without specific mention.

3. In a majority of the jurisdictions where, as in Michigan, murder is divided into degrees, voluntary intoxication may be considered and may have the effect of reducing a homicide from murder in the first degree to murder in the second degree. Under the law of this state, there is more than a sufficient basis on which to distinguish the degrees of murder and to require that a specific intent be demonstrated for first-degree murder only. First-degree murder requires a willful killing, an intent to accomplish the result of death; specific intent to kill is a necessary constituent of the elements of premeditation and deliberation of first-degree murder. The *mens rea* of second-degree murder is supplied by the element of malice, which may be an intent to inflict great bodily harm or a wanton and willful disregard of the likelihood that the natural tendency of an act is to cause death or great bodily harm, not necessarily an intent to kill. Voluntary intoxication does not negate such malice and is not available as a defense.

Justice Coleman wrote separately to note that she was not persuaded that the distinction between general-intent and specific-intent crimes is illogical or unworkable and that she did

not join in the recommendation to the Legislature to address the issue.

Affirmed.

Justice Levin, joined by Justice Kavanagh, dissenting, would hold that both first-degree criminal sexual conduct and second-degree murder are specific-intent crimes to which the defense of voluntary intoxication is applicable.

1. The critical element of common-law murder is malice aforethought. For purposes of second-degree murder, malice aforethought is established by evidence tending to show that the defendant acted with the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm. Intent to kill is a specific intent. So is intent to inflict great bodily harm. The conclusion that second-degree murder does not require specific intent because the requirement of malice may be satisfied by proving willful and wanton disregard ignores that it is rare to charge second-degree murder on that theory. The prosecutor's theory should be viewed realistically in determining whether the crime charged required specific intent. The prosecutor in this case did not claim willful and wanton disregard; rather, that the defendant killed the victim with premeditation, deliberation, and malice.

2. At common law, rape was a general-intent crime. However, common-law rape was abolished in Michigan and replaced by statutory criminal sexual conduct. The most reasonable construction of the first-degree criminal sexual conduct statute, read as a whole, is that it requires intent to penetrate. The critical words are "sexual contact" and "sexual penetration". "Sexual contact" by its definition requires a specific intent. Given the basic structure of the statute, "sexual penetration" should be construed to require intent to penetrate.

3. Robbery and burglary, both specific-intent crimes, are most often committed by persons with a history of criminal behavior. Most murders and a significant proportion of sexual offenses are committed by persons who have no criminal history. Assuming that the defense of voluntary intoxication is justified at all, a rational legal system would allow a person who has no prior criminal history, but loses control while intoxicated, to raise the defense, at least in mitigation, if it allows a person who has a history of predatory behavior to do so.

OPINION OF THE COURT

1. CRIMINAL LAW — DEFENSES — VOLUNTARY INTOXICATION.

The defense of voluntary intoxication may be raised where the crime charged involves a specific intent as a necessary element of the crime because the intoxication may negate the intent; where the crime involves only a general intent, voluntary intoxication is not available as a defense.

2. RAPE — DEFENSES — VOLUNTARY INTOXICATION.

The defense of voluntary intoxication is not available to a charge of first-degree criminal sexual conduct because it is a crime of general intent (MCL 750.520b; MSA 28.788[2]).

3. HOMICIDE — DEFENSES — VOLUNTARY INTOXICATION.

The defense of voluntary intoxication is not available to a charge of second-degree murder because it is a crime of general intent (MCL 750.317; MSA 28.549).

CONCURRING OPINION BY COLEMAN, J.

4. CRIMINAL LAW — GENERAL-INTENT CRIMES — SPECIFIC-INTENT CRIMES.

*The distinction between general- and specific-intent crimes is neither illogical nor unworkable and does not require legislative reform.*

DISSENTING OPINION BY LEVIN, J.

5. HOMICIDE — SECOND-DEGREE MURDER — INTENT — DEFENSES — VOLUNTARY INTOXICATION.

*The intent to kill or to inflict great bodily harm, either of which will support a conviction of second-degree murder, are specific intents, and it is hypertechnical to classify second-degree murder as a crime of general intent because in a rare case a person might be convicted on a theory of willful and wanton disregard, a general intent; rather, each case should be examined on its own theory, and voluntary intoxication should be allowed as a defense where a specific intent is charged (MCL 750.317; MSA 28.549).*

6. RAPE — CRIMINAL SEXUAL CONDUCT — STATUTES.

*The common-law definition of rape, which did not in so many words describe a particular intent, is no longer the law of this state; it has been repealed and replaced by statutory definitions (MCL 750.520a; MSA 28.788[1]).*

7. RAPE — CRIMINAL SEXUAL CONDUCT — INTENT — STATUTES — CONSTRUCTION.

   *The statutory definition of "sexual penetration" in the criminal sexual conduct statute should be construed to require the intent to penetrate (MCL 750.520a; MSA 28.788[1]).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *James S. Sexsmith,* Senior Assistant Prosecuting Attorney, for the people in *Langworthy.*

*Richard A. Smith* for defendant Langworthy.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Frank J. Bernacki,* Assistant Prosecuting Attorney, for the people in *Lundy.*

*El-Hadi T. Shabazz* for defendant Lundy.

FITZGERALD, C.J. The common ground of these cases is that, at their trials, both defendants attempted to utilize voluntary intoxication as a defense to charges of crimes which Michigan appellate courts previously have held to be general-intent crimes. Both defendants request this Court to expand the category of specific-intent crimes to include the offenses they were convicted of, *i.e.,* first-degree criminal sexual conduct and second-degree murder, in order to make available to them the defense of voluntary intoxication.

FACTS

Defendant Lundy was found guilty but mentally ill of three counts of first-degree criminal sexual

conduct, MCL 750.520b; MSA 28.788(2), and sen-
tenced to three concurrent life terms. The convic-
tions arose from the October 30, 1978, rape of his
adult sister. The crime, carried out with the use of
a knife as a threatening weapon, involved three
penetrations.

At Lundy's bench trial, the major issue centered
on defendant's mental state at the time of the
commission of the crime. His defense was predi-
cated upon expert testimony regarding his mental
state as well as evidence that he had been sniffing
glue and drinking alcohol immediately prior to the
crime. The trial court rejected Lundy's insanity
defense as well as his intoxication defense, ruling
as to the latter that first-degree criminal sexual
conduct is a general-intent crime.

The Court of Appeals affirmed in a memoran-
dum opinion.

Defendant Langworthy was convicted of second-
degree murder, MCL 750.317; MSA 28.549, and
was sentenced to 60 to 90 years in prison.

After a bench trial, the trial judge found that on
the night of November 5, 1976, defendant, Roy
Schipani, and Alan Parker were together indulg-
ing in alcohol and drugs in a house in Ypsilanti.
Parker left sometime during the early morning
hours to purchase cigarettes at a gas station.
There he met the decedent, William Wedge, who
returned to the house with Parker.

The trial judge further found that Wedge was
intoxicated and offensive and that Wedge made
certain comments which irritated defendant.
Wedge then passed out and the three others dis-

cussed robbing Wedge. Defendant suggested that they "blow him away" and then he turned up the stereo, went to a closet where he got a rifle and shot Wedge in the mouth and in the chest.

The trial judge determined that the defendant was not mentally ill or legally insane at the time of the commission of the crime. He found that defendant had taken at least 400 milligrams of Valium and some codeine and Nembutal and had been drinking Southern Comfort and Coke at the time of the crime. The trial judge concluded:

"However, the court finds that as a result of the drugs and alcohol his judgment and his appreciation of the consequence of his actions was grossly impaired.

"That he committed the act knowingly with malice but 'without a real concept of the consequence of the act.' That he had a conscious intent to commit the crime but that his judgment and appreciation of the consequence of his act was grossly impaired as the result of the drugs and alcohol."

The Court of Appeals affirmed in an unpublished opinion per curiam, ruling, *inter alia,* that second-degree murder is not a specific-intent crime and that, therefore, voluntary intoxication was not a defense.

A. THE VOLUNTARY INTOXICATION DEFENSE

Every jurisdiction in this country recognizes the general principle that voluntary intoxication is not any excuse for crime.[1] This is in accord with the common-law rule dating back to the sixteenth

---

[1] Anno: *Modern status of the rules as to voluntary intoxication as defense to criminal charge,* 8 ALR3d 1236; 21 Am Jur 2d, Criminal Law, § 155, p 295; 22 CJS, Criminal Law, § 66, p 214; Perkins, Criminal Law (2d ed), p 898; 2 Torcia, Wharton's Criminal Law (14th ed), § 108, p 49; *People v Walker,* 38 Mich 156, 158 (1878); *People v Guillett,* 342 Mich 1, 5; 69 NW2d 140 (1955); *Bishop v United States,* 71 US App DC 132, 136; 107 F2d 297 (1939).

century which allowed no concession to a defendant because of his intoxication.[2] However, by the early nineteenth century, the English courts began to fashion a doctrine to mitigate the harshness and rigidity of the traditional rule.[3] The doctrine, which has come to be known as the exculpatory rule, was stated by Judge Stephen as follows:

"[A]lthough you cannot take drunkenness as any excuse for crime, yet when the crime is such that the intention of the party committing it is one of its constituent elements, you may look at the fact that a man was in drink in considering whether he formed the intention necessary to constitute the crime."[4]

It is said that the theory behind this exculpatory doctrine is that it does not hold that drunkenness will excuse crime; rather, it inquires whether the very crime which the law defines has in fact been committed.[5] Almost every state, by statute or by common law, has adopted the exculpatory rule,[6] and Michigan is no exception.[7]

---

[2] Hall, Criminal Law (2d ed), p 529; Clark & Marshall, Crimes (7th ed), § 6.09, p 433; Singh, *History of the Defense of Drunkenness in English Criminal Law*, 49 L Qtr Rev 528 (1933).

In fact, Blackstone and Coke attempted to make drunkenness an aggravation of the offense. Hall, *supra*, p 530; Singh, *supra*, p 531; Miller, Criminal Law, § 42, p 137.

[3] The doctrine was first suggested by Justice Holroyd in 1819 when he stated that voluntary drunkenness should be considered in determining the existence of premeditation. *Rex v Grindley*, quoted in *Rex v Carroll*, 7 C & P 145; 173 Eng Rep 64 (1835). In *Regina v Cruse*, 8 C & P 541; 173 Eng Rep 610 (1838), in a case of assault with intent to murder, the jury was instructed that gross intoxication could disprove the intent element for the aggravated offense. Hall, fn 2 *supra*, pp 531-532; *People v Hood*, 1 Cal 3d 444, 456, fn 5; 82 Cal Rptr 618; 462 P2d 370 (1969); Singh, fn 2 *supra*, pp 537-539.

[4] *Regina v Doherty*, 16 Cox Crim C 306, 308 (N P 1887).

[5] *State v Rumble*, 81 Kan 16; 105 P 1 (1909); *Commonwealth v Graves*, 461 Pa 118; 334 A2d 661 (1975); 21 Am Jur 2d, Criminal Law, § 155, p 299.

[6] See, *e.g.*, 8 ALR3d 1236, fn 1 *supra*. Vermont and Missouri are the exceptions.

[7] For a history of the development of the exculpatory rule in

"While it is true that drunkenness cannot excuse crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist." *People v Walker,* 38 Mich 156, 158 (1878). See, also, *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973).

The applicability of the exculpatory rule rests entirely on the determination whether the offense involved is categorized as a general- or specific-intent crime.

"It is important in this decision to emphasize that intoxication may only negative the existence of *specific intent.* Examination of the cases reveals that where the rule was applied, it was done so in cases where the crime charged also involved a specific intent." *People v Guillett,* 342 Mich 1, 6; 69 NW2d 140 (1955). See, also, *Roberts v People,* 19 Mich 401 (1870).

Thus, if a crime is determined to require only a general intent, the defendant's voluntary intoxication during the commission of an offense may not be asserted as a defense to the existence of the mental element of that crime.

The general intent-specific intent dichotomy arose as a compromise between the perceived need to afford some relief to the intoxicated offender whose moral culpability was considered less than that of a sober person who committed the same offense and the view that a person who voluntarily becomes drunk and commits a crime should not escape the consequences.[8] Although the rule seems

---

Michigan, see *People v Kelley,* 21 Mich App 612; 176 NW2d 435 (1970); 1 Mich Criminal Jury Instructions (Ann Arbor: Institute of Continuing Legal Education), State of Mind Commentary, pp 6-18—6-20.

[8] Hall, fn 2 *supra,* pp 537, 544; *People v Hood,* fn 3 *supra,* p 455.

It is reported that Justice Coleridge first used the term "specific intention" in *Regina v Monkhouse,* 4 Cox Crim C 55 (1849). Yet, "[h]e

logical on the surface, it has proven to be far from logical in application. While specific intent can easily be defined as "a particular criminal intent beyond the act done"[9] (whereas general intent is the intent simply to do the physical act), the ease of stating the definition belies the difficulty of applying it in practice. In order to appreciate the problem, one need only note the divergence of opinion among the jurisdictions as to which crimes require a specific intent and, therefore, to which crimes the exculpatory rule applies.[10]

It has been noted that the law with respect to voluntary intoxication and criminal responsibility has shown little tendency to change or develop despite advances socially and medically in this area;[11] and, we might add, despite strong criticism from treatise writers,[12] law review commentators,[13] case law,[14] and the drafters of the Model Penal

did not mean to weave any particular magic with these words." Beck & Parker, *The Intoxicated Offender—A Problem of Responsibility,* 44 Can B Rev 563, 578 (1966). See, also, Singh, fn 2 *supra,* pp 539-540.

[9] *People v Depew,* 215 Mich 317, 320; 183 NW 750 (1921). See, also, *Roberts v People,* 19 Mich 401, 414 (1870); LaFave & Scott, Criminal Law, § 28, p 202:

"[T]he most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime."

[10] 5 Am Jur Proof of Facts 2d, pp 194-196. See, *e.g.,* 8 ALR3d, fn 1 *supra,* pp 1246-1257.

[11] 21 Am Jur 2d, fn 1 *supra,* p 295; 8 ALR3d, fn 1 *supra,* p 1239.

[12] See, *e.g.,* Hall, fn 2 *supra;* LaFave & Scott, fn 9 *supra,* p 344:

"[I]t is better * * * to stay away from those misleading concepts of general intent and specific intent."

[13] See, *e.g.,* Deddens, *Volitional Fault and the Intoxicated Criminal Offender,* 36 U Cinn L Rev 258 (1967); Hall, *Intoxication and Criminal Responsibility,* 57 Harv L Rev 1045 (1944); Note, *Intoxication as a Criminal Defense,* 55 Colum L Rev 1210 (1955); Comment, *Criminal Law—Intoxication as a Defense,* 55 Can B Rev 691 (1977); Beck & Parker, fn 8 *supra.*

[14] *People v Hood,* fn 3 *supra; People v Kelley,* fn 7 *supra.* Australia's High Court recently rejected the general intent—specific intent rule and held that the prosecutor must prove the mental element for each. The High Court said that the distinction between general and

Code.[15] My Brother LEVIN summarized the major criticisms of the exculpatory rule while on the Court of Appeals:

"It has also been maintained that the availability of the intoxication defense should not depend on whether a court chooses to characterize an element of the crime charged as separate from the element of general intent. It has been observed that neither common experience nor psychology knows of any such phenomenon as 'general intent' distinguishable from 'specific intent.' It does seem incongruous to make the admissibility of mitigating evidence depend on whether the statutory definition of a crime includes a separately stated intent, and other methods of defining specific intent are highly manipulable.

"The clumsiness of the exculpatory device has been criticized. A defendant who is charged with a specific intent crime may go free if he can prove he was intoxicated; this result contrasts sharply with the absolute denial of relief to the intoxicated offender charged with a crime of general intent.

"If the function of the general/specific intent distinction is to eliminate the defense as to lesser included offenses, e.g., assault and battery, but to retain it for the more serious offenses, e.g., armed robbery, and in that manner mitigate the general rule that intoxication is not a defense, then manifestly this should be done on a consistent basis. The right to interpose this defense should depend on something more substantial than a technical distinction that was seized upon by a judge

specific intent was unsatisfactory in that it is difficult to define, it is not based on any factual difference between various states of mind, and it does not always work rationally in that it is not always the more serious offense which requires proof of specific intent. *Queen v O'Connor*, 29 Austl L Rpts 449 (1980), as reported in Orchard, *Criminal Responsibility and Intoxication—The Australian Rejection of Majewski*, New Zealand L J 532 (1980).

[15] The Model Penal Code would abolish the use of the general intent-specific intent distinction. "[W]e can see no virtue in preserving the concept of 'general intent,' which has been an abiding source of ambiguity and of confusion in the penal law." Model Penal Code (Tentative Draft No 4, 1956), § 2.02, Comment 5, p 128. See, also, Model Penal Code (Tentative Draft No 9, 1958), § 2.08.

130 years ago and adopted by other judges to reach results thought sound in the cases then before them. *People v Kelley,* 21 Mich App 612, 628-630; 176 NW2d 435 (1970).

While we recognize the illogic and incongruity of the general intent-specific intent dichotomy, the remedy is not clear-cut. One solution, of course, would be to join the ranks of those few states which do not allow the voluntary intoxication defense even where a specific intent is required. We agree, however, with Professors LaFave and Scott that this view is clearly wrong.[16] It would require us to ignore basic concepts of criminal culpability as well as modern scientific views on alcoholism.

The alternative would be to allow the intoxication defense to be asserted against any charge of crime which traditionally has required general or specific intent. Although this Court has the power to so modify the common-law rule,[17] we believe that it would be imprudent to take that step at this time. While abolishing the general intent-specific intent distinction may rid the courts of an illogical rule, it would do nothing to help solve the problem of the intoxicated offender, both from the standpoint of the offender and from the standpoint of society which suffers from the acts of the intoxicated offender. Moreover, because the parties before us did not specifically address the issue of abolishing the exculpatory rule, we do not have the benefit of an adversarial presentation of the pros and cons of such an action. This Court should be hesitant to abolish an established common-law rule without a fully developed presentation of both sides of the question.

[16] LaFave & Scott, fn 9 *supra,* p 344.

[17] *People v Aaron,* 409 Mich 672, 723, fn 112; 299 NW2d 304 (1980).

The problem of alcoholism and crime is complex, requiring studies and policy considerations beyond the ability of any judicial body. Various solutions which have been proposed would require legislative action.[18] We urge the Legislature to consider the intoxicated-offender problem and to modernize Michigan law on this subject. Until the Legislature takes action or until we are persuaded to modify the common-law rule in an appropriate case in the future, we shall continue to struggle with applying the rule case by case.

## B. Is First-Degree Criminal Sexual Conduct a Specific-Intent Crime?

Defendant Lundy asks this Court to find that first-degree criminal sexual conduct includes the element of specific intent. His only argument is that felonious assault is a specific-intent crime and, therefore, in those criminal sexual conduct situations where felonious assault is a lesser included offense logic dictates that specific intent is also an element of the criminal sexual conduct. Because Lundy possessed a weapon while committing the criminal sexual conduct herein, he argues that specific intent was an element of proof which the intoxication defense should have been allowed to negative.

---

[18] Professor Hall has proposed that a distinction be made between inexperienced inebriates, "those who had no previous experience with intoxication that rendered them dangerous", and experienced inebriates. Hall, fn 2 *supra,* p 554.

Another commentator suggests for consideration the 1960 German *Draft* Penal Code which adopts the middle ground of holding the intoxicated offender to a diminished responsibility. Deddens, fn 13 *supra,* p 287.

Justice LEVIN, in *People v Kelley, supra,* 21 Mich App 628, fn 23, recommends legislation defining a new crime of committing crimes under the influence of drugs or liquor. This new crime could be graded, "depending on the extent and the gravity of antisocial act(s) previously committed in a comatose condition, and on the antisocial conduct immediately involved".

This case requires us to decide whether first-degree criminal sexual conduct is a general- or specific-intent crime. We have previously held, under the predecessor to the criminal sexual conduct statute,[19] that rape is not a specific-intent crime. *People v Phillips,* 385 Mich 30; 187 NW2d 211 (1971).[20] This comports with the overwhelming weight of authority which holds that rape is a general-intent crime.[21]

An examination of the statute convinces us that the Legislature did not intend to include specific intent as an element of first-degree criminal sexual conduct. Neither the first-degree criminal sexual conduct statute nor the corresponding statutory definition of "sexual penetration" contains any language whatsoever regarding intent.[22] The fact that the Legislature must have been cognizant, in enacting the first-degree criminal sexual conduct provision, of the established rule that rape does not require specific intent, combined with the absence of any provision regarding intent, considerably weakens defendant's argument that his

[19] MCL 750.520; MSA 28.788 (since repealed, 1974 PA 266).

[20] See, also, *People v Maglich,* 234 Mich 88; 207 NW 865 (1926), where this Court approved the trial court's instruction denying intoxication as a defense to a charge of rape.

[21] *United States v Thornton,* 162 US App DC 207; 498 F2d 749 (1974); *People v Brumfield,* 72 Ill App 3d 107; 390 NE2d 589 (1979); *State v Geer,* 13 Wash App 71; 533 P2d 389 (1975); *Frank v State,* 6 Md App 332; 251 A2d 249 (1969); *Henry v United States,* 432 F2d 114 (CA 9, 1970); *United States v Lavallie,* 666 F2d 1217 (CA 8, 1981); *Isaacs v Commonwealth,* 553 SW2d 843 (Ky, 1977); *Askew v State,* 118 So 2d 219 (Fla, 1960); *State v Ramirez,* 84 NM 166; 500 F2d 451 (1972); *State v Pilcher,* 158 NW2d 631 (Iowa, 1968).

We have been unable to find any case which has specifically held that intoxication is a defense to a charge of rape. It appears that we are not alone. *Frank v State,* 6 Md App 332, 335; 251 A2d 249 (1969).

[22] When a statute sets forth a crime and its punishment without designating its elements, courts must look to the common law for guidance. See, *e.g., People v Aaron,* fn 17 *supra.* However, for the reasons outlined above, the common-law definition does not aid defendant's position.

crime is a specific-intent offense. If the Legislature wanted to add specific intent as an element, knowing that the predecessor statute had been consistently construed as a general-intent crime, it would have specifically done so. The fact that it did not leads us to conclude that the Legislature intended to maintain the general rule that "no intent is requisite other than that evidenced by the doing of the acts constituting the offense", *i.e.,* general intent.[23]

Moreover, one of the purposes of the new act was to strengthen the laws against sexual violence by removing certain evidentiary obstacles to the prosecution of sexual assault.[24] This further strengthens our conclusion that it is unlikely that a new element of proof would be added without specific mention.

Finally, we reject defendant's argument that if an applicable lesser included offense of a criminal sexual conduct offense requires specific intent, it necessarily follows that the greater offense also requires proof of specific intent. Other courts presented with this argument have rejected it,[25] and we reject it also. We concur with the United States Court of Appeals, writing in *United States v Thornton,* 162 US App DC 207, 210-211; 498 F2d 749 (1974):

"Actually, as has been stated, '[A]ll attempts require specific intent'; so if it were to follow appellant's logic of

[23] 75 CJS, Rape, § 9, p 471. See, also, *Walden v State,* 178 Tenn 71, 77; 156 SW2d 385 (1941); *United States v Lavallie,* fn 21 *supra; Coots v Commonwealth,* 418 SW2d 752 (Ky App, 1967); *State v Smith,* 3 Wash 2d 543; 101 P2d 298 (1940); *Isaacs v Commonwealth,* fn 21 *supra; Askew v State,* fn 21 *supra.*

[24] See *People v Willie Johnson,* 406 Mich 320, 330; 279 NW2d 534 (1979).

[25] *Askew v State,* fn 21 *supra,* pp 221-222; *United States v Thornton,* fn 21 *supra.*

superimposing the specific intent of an included crime upon the greater offense, a specific intent would be required for practically every crime. This could not be the law. The differing requirements for lesser offenses result principally from the differing nature of the crimes and from their historical and legislative definitions. The requirement of a specific intent for lesser crimes exists because of a desire to protect the individual against conviction on slight evidence. The same protection is unnecessary where substantial overt acts are committed and fully consummated offenses are provable. There is no rule of law that crimes which carry greater punishment require the proof of greater, or even the same, criminal intent as included or related crimes which carry lesser punishment. Each crime has its own elements and peculiarities and as we said in *McGuinn v United States,* 89 US App DC 197, 199; 191 F2d 477, 479 (1951), 'Rape is not a crime which requires a specific intent.' This is in accord with the great weight of authority which holds the crime of rape requires no intent other than that indicated by the commission of the acts constituting the offense."

Accordingly, we conclude that first-degree criminal sexual conduct is a general-intent crime for which the defense of voluntary intoxication is not available.[26]

## C. IS SECOND-DEGREE MURDER A GENERAL- OR SPECIFIC-INTENT CRIME?

Defendant Langworthy petitions this Court to extend to second-degree murder cases the rule in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), that non-felony first-degree murder is a

---

[26] We note that the Court of Appeals has likewise concluded that first-degree criminal sexual conduct and also second-degree criminal sexual conduct are general intent crimes. *People v Bell,* 101 Mich App 779; 300 NW2d 691 (1980); *People v Brewer,* 101 Mich App 194; 300 NW2d 491 (1980); *People v Fisher,* 77 Mich App 6; 257 NW2d 250 (1977).

specific-intent crime. Defendant urges this Court to adopt the California rule of diminished capacity.

In support of his position, defendant has cited for our consideration cases from other jurisdictions which allow murder to be reduced to manslaughter through the successful assertion of the voluntary intoxication defense. We have reviewed these cases and others, and we have concluded that they are not applicable to the situation existing in Michigan.[27] An examination of the jurisdictions which defendant relies upon demonstrates why the cases are clearly distinguishable.

Unlike that of Michigan, the statutory schemes of some states do not divide murder into degrees. To further complicate comparison, these states may require, as an element of their single crime of murder, premeditation or some other specific mental element (such as intent to kill) not required for second-degree murder in Michigan.[28] These states do no more than Michigan already does with

[27] The difficulty with reliance on case law from other jurisdictions in this area of law is that we are dealing with three concepts, each of which is necessary to the decision of the question involved here, and each of which is unique to the jurisdiction under consideration. Those three concepts are the definition of second-degree murder, the definition of malice, and the particular voluntary intoxication rule involved, whether statutory or common-law. The lack of identity of the three concepts makes comparison difficult. The divergence of result depending on the rule followed by a particular jurisdiction is noted in 40 Am Jur 2d, Homicide, § 129, p 421.

[28] *Choate v State,* 19 Okla Cr 169; 197 P 1060 (1921); *Oxendine v State,* 335 P2d 940 (Okla, 1958); *People v Jacobs,* 44 Ill App 3d 290; 357 NE2d 821 (1976).

Defendant Langworthy cites *Cagle v State,* 211 Ala 346; 100 So 318 (1924), as an example of a state which allows voluntary intoxication to reduce murder to manslaughter. However, Alabama has changed its murder statute since *Cagle* and now divides murder into degrees. As a result, Alabama now holds that second-degree murder is not a specific intent crime and voluntary intoxication is not a defense. *Rogers v State,* 49 Ala App 78; 268 So 2d 859 (1972). This provides a good example of why it is difficult to compare cases involving murder statutes with degrees with cases involving murder statutes without degrees.

respect to first-degree murder, *i.e.,* allow intoxication to negate the element of premeditation (or intent to kill) and reduce the degree of the offense. The difference is that in these states negation of premeditation, for example, means that murder has not been proven at all, whereas in Michigan it only means that first-degree murder has not been proven. This difference is due to the legislative classification of homicide, which we have no control over and, consequently, which makes these cases distinguishable.

Other states allow charges of second-degree murder to be reduced to manslaughter, but this result is mandated by the particular statutory definition of the required *mens rea.* In Colorado, for instance, under a prior statute, second-degree murder was not a specific-intent crime, and voluntary intoxication was not a defense. Under the revised statute, the inclusion of the term "intentionally" caused the Colorado Supreme Court to redefine second-degree murder as a specific-intent crime.[29] Michigan has no statutory *mens rea* requirement for second-degree murder which would mandate similar treatment.

Some of the other states which defendant refers us to have case-law definitions of malice which require premeditation or intent to kill as necessary requirements.[30] Michigan does not have either of these elements as a prerequisite to second-degree murder.[31]

[29] *People v Romero,* 192 Colo 106; 559 P2d 1101 (1976). See, also, *Lorig v State,* 58 AD2d 734; 396 NYS2d 122 (1977); *People v Davis,* 18 AD2d 644; 235 NYS2d 282 (1962). The statutory requirement of "purposeful" is another example of these types of cases. See, *e.g., State v Rumble,* 81 Kan 16; 105 P 1 (1909) (former statute); *State v Fox,* 68 Ohio St 2d 53; 428 NE2d 410 (1981).

[30] See, *e.g., King v State,* 90 Ala 612; 8 So 856 (1891).

[31] As discussed below, in Michigan the intent to kill will satisfy the malice requirement, but it is not required.

The remaining jurisdiction which defendant cites is California. We are referred to *People v Conley,* 64 Cal 2d 310; 49 Cal Rptr 815; 411 P2d 911 (1966), and we are asked to adopt the diminished-capacity rule of that case. Under the diminished-capacity doctrine, *inter alia,* voluntary intoxication may negate the malice requirement for second-degree murder and reduce a homicide to manslaughter. However, recent legislation has seriously undermined the controversial diminished-capacity doctrine in California. California Penal Code § 28(a) abolished the independent defense of diminished capacity established by cases such as *Conley,* and amendments to California Penal Code §§ 188 and 189 have overruled expansive definitions of malice used in *Conley* and other California cases.[32]

Thus, we find that all of the jurisdictions which defendant relies upon as persuasive authority for his position are not applicable to our circumstances in Michigan. In any event, despite the existence of cases which allow a proper voluntary intoxication defense to reduce murder or second-degree murder to manslaughter, the majority rule remains as follows:

" 'It is now generally held that intoxication may be

[32] "The state Legislature previously had defined malice aforethought as including only the specific states of mind required to render an unlawful killing a murder—*e.g.,* intent (in the absence of the heat of passion upon legally adequate provocation) or the conscious creation and disregard of a substantial and unjustifiable risk of death (*i.e.,* 'abandoned and malignant-heart' killings). If these specific mental states were proven, malice also was proven. As a technical matter, malice had no independent meaning. In *[People v Conley,* 64 Cal 2d 310; 49 Cal Rptr 815; 411 P2d 911 (1966)] * * * however, the Supreme Court announced that malice aforethought also required proof that the defendant possessed the ability to comprehend and be aware of his duty to act within the law. This was a novel addition to the elements of murder that previously was unknown in California." Morse & Cohen, *Diminishing Diminished Capacity in California,* 2 Cal Lawyer 24, 25 (1982).

considered where murder is divided into degrees, and in many states, may have the effect of reducing homicide from murder in the first degree to murder in the second degree. In fact, in most states the only consideration given to the fact of drunkenness or intoxication at the time of the commission of the homicide is to enable the court and jury to determine whether the prisoner may be guilty of murder in the second degree, rather than of murder in the first degree. The rule followed by most courts is that intoxication will not reduce a homicide from murder to manslaughter. 40 Am Jur 2d, Homicide, § 129, pp 420-421. See also 40 CJS, Homicide, § 5, p 831. ("Voluntary intoxication does not of itself negative the malice required to constitute murder in the second degree and thereby reduce murder in the second degree to voluntary manslaughter."); Anno: 12 ALR 861, 888 ("the great weight of authority is that intoxication will not reduce a homicide from murder to manslaughter"), 79 ALR 897, 904'."[33]

Defendant also contends that the distinction between first- and second-degree murder is not so great as to require the difference in treatment vis-à-vis the intoxication defense. He argues that because "the line drawn is a fine one", the emphasis should not be placed on the difference between first- and second-degree murder; rather, the emphasis should be placed on the difference between murder and manslaughter, the former distinction only being necessary for punishment purposes. At oral argument, defense counsel stressed that willfulness is the common thread of first- and second-degree murder and that the Criminal Jury Instructions use the term willfulness in conjunction with both crimes. Thus, defense counsel argued,

[33] *State v Hall*, 214 NW2d 205, 208-209 (Iowa, 1974). See, also, LaFave & Scott, fn 9 *supra*, pp 345, 586; Model Penal Code (Tentative Draft No 9, 1958), § 2.08, p 5, Comment 2; 8 ALR3d, fn 1 *supra*; Hall, fn 2 *supra*, p 534; *State v Bunn*, 283 NC 444; 196 SE2d 777 (1973).

voluntary intoxication should be allowed to negate the willfulness element of both degrees of murder.

Contrary to defense counsel's argument, our reading of the relevant jury instructions indicates no requirement of willfulness for second-degree murder. The requirement of a "wilful" killing is contained only in the language of the first-degree murder statute. Furthermore, while the distinction between first- and second-degree murder, on the facts of a particular case, may at times appear to be a "fine line", it nevertheless represents a policy decision of our Legislature to punish more severely certain types of murder which it considered to be more serious. We do not question the wisdom of that policy decision.

We find that there is more than a sufficient basis to distinguish between the degrees of murder to require that specific intent be demonstrated for first-degree murder only. In *People v Garcia, supra,* we held that "wilful" killing means the "intent to accomplish the result of death". Moreover, specific intent to kill is a necessary constituent of the elements of premeditation and deliberation.[34] It would be difficult, if not impossible, to premeditate and deliberate a killing without at the same time possessing the specific intent to kill. This logic, however, does not apply to second-degree murder.

The *mens rea* requirement for second-degree murder is supplied by the element of malice. While the intent to kill satisfies the malice requirement, it is not a necessary element of second-degree murder. An intent to inflict great bodily harm or a wanton and willful disregard of the likelihood that the natural tendency of a person's behavior is to cause death or great bodily harm

---

[34] *State v Bunn,* p 458.

may also satisfy the malice requirement. *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980).

With respect to the element of malice encompassing wanton and willful disregard, we concur with the majority rule that voluntary intoxication is not a defense. We agree with the analysis of Professors LaFave and Scott:

"The person who unconsciously creates risk because he is voluntarily drunk is perhaps morally worse than one who does so because he is sober but mentally deficient. At all events, the cases generally hold that drunkenness does not negative a depraved heart by blotting out consciousness of risk, and the Model Penal Code, which generally requires awareness of the risk for depraved-heart murder (and for recklessness manslaughter), so provides."[35]

Because second-degree murder does not require intent to kill, but rather, only wanton and willful disregard malice need be shown; and, because we have concluded that voluntary intoxication may not negate this latter category of malice, we believe that voluntary intoxication should not be a defense to a charge of second-degree murder. We are aware that there may be second-degree murder cases which involve only the intent to kill or the intent to do great bodily harm types of malice. We are further aware that these two categories of malice sound suspiciously akin to the traditional language of specific intent. However, we decline to extend the defense of voluntary intoxication to these cases on the grounds of public policy.

[35] LaFave & Scott, fn 9 *supra,* p 545. See, also, Perkins, fn 1 *supra,* p 900; Torcia, fn 1 *supra,* p 63; *Rogers v State,* 196 Tenn 263; 265 SW2d 559 (1954); *Jones v State,* 70 Wis 2d 41; 233 NW2d 430 (1975); *Commonwealth v Cambric,* 475 Pa 454; 380 A2d 1224 (1977); *People v LeGrand,* 61 AD2d 815; 402 NYS2d 209 (1978); NY Penal Law § 15.05; ND Cent Code § 12.1-04-02.

In *People v Bourne,* 385 Mich 170, 172; 188 NW2d 573 (1971), this Court held that a killing may be only manslaughter even though there is an intent to kill. Quoting from Justice CAMPBELL in *People v Scott,* 6 Mich 287, 295 (1859), we noted that:

"Voluntary manslaughter often involves a direct intent to kill, but the law reduces the grade of the offense because, looking at the frailty of human nature, it considers great provocations sufficient to excite the passions beyond the control of reason."

Hence, because of policy considerations, the law allows provocation to negate the element of malice and reduce the offense from murder to manslaughter. We are not aware of any statutory or common-law rule in Michigan which holds similarly when voluntary intoxication is a factor. Nor do we believe it wise to extend the policy exception to include voluntary intoxication as a factor which may reduce to manslaughter what would otherwise be a murder.

In short, we agree with the majority of jurisdictions which hold:

"As between murder in the first degree and murder in the second degree, voluntary drunkenness may be a legitimate subject of inquiry, but as between murder in the second degree and manslaughter it is never material and cannot be considered."[36]

We hold that second-degree murder is not a specific-intent crime for which the defense of voluntary intoxication may be asserted.

___

[36] *Johnson v Commonwealth,* 135 Va 524, 529; 115 SE 673 (1923).

## D. OTHER ISSUES

We have carefully reviewed the remaining allegations of error of both defendants and have been unable to find any error which merits reversal.

## E. CONCLUSION

Although we consider the general intent-specific intent dichotomy an unsatisfactory concept in the law, we believe it is more appropriate for the Legislature to fashion reform in this area, and we strongly recommend such reform. For the present, we hold that the defense of voluntary intoxication is not available to charges of the crimes of first-degree criminal sexual conduct and second-degree murder. Or, to use the traditional rubric, we hold that the above offenses are crimes of general intent. The Court of Appeals is affirmed in both cases.

WILLIAMS, COLEMAN, and RYAN, JJ., concurred with FITZGERALD, C.J.

COLEMAN, J. I have signed my colleague's opinion believing that his reasoning and conclusions are correct regarding the applicability of the voluntary intoxication defense in these cases. I write separately to note that I do not join in his recommendations to the Legislature to address the general- specific-intent analysis employed in these cases. I am not persuaded that the distinction is either illogical or unworkable.

LEVIN, J. *(dissenting).* Langworthy was convicted of second-degree murder and Lundy was convicted of first-degree criminal sexual conduct. Their appeals were consolidated for argument.

Langworthy and Lundy contend that the offenses of which they were convicted are specific-intent

crimes, that voluntary intoxication may negative that intent and that the trial judges, sitting without juries, erred in refusing to consider the defense of voluntary intoxication. We agree in both cases and would remand for new trials.

## I

The critical element of second-degree (common-law) murder is malice aforethought.[1] Malice aforethought, for purposes of second-degree murder, is established by evidence tending to show that the defendant acted with either "the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of [his] behavior is to cause death or great bodily harm".[2]

In *People v Garcia,* 398 Mich 250, 259; 247 NW2d 547 (1976), this Court recognized, in the context of first-degree murder, that intent to kill is a specific intent which voluntary intoxication can negate. Similarly, malice aforethought based upon intent to inflict great bodily harm is, by definition, a specific intent although there has not been any need to rule thereon until now. The opinion of the Court seems to agree.

The reason the Court gives for its conclusion that second-degree murder is not a specific-intent offense is that the malice requirement may be satisfied by showing "willful and wanton disregard". This ignores that it is rare for a person to be charged with second-degree murder on the theory that he acted with willful and wanton disregard. Where the evidence does not support a

---

[1] *People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980).

[2] *Id.*

finding of intent to kill or to inflict great bodily harm, the charge is usually voluntary manslaughter and not second-degree murder. It is letting the tail wag the dog to classify second-degree murder as a general-intent crime because willful and wanton disregard may in a few isolated cases be the prosecution's theory.

We should adopt the approach this Court takes today in *People v Woods, ante,* p 581, and look realistically at the prosecution's theory in the instant case of *Langworthy.* In *Woods,* this Court found that the judge's instruction on implied malice was erroneous, but, nevertheless, concluded on the evidence presented that the error was harmless:

"The court instructed the jury that either express or implied malice was sufficient to find malice, and since malice could not have been implied under the evidence presented and evidence clearly establishing express malice was believed, the instruction on implied malice was not prejudicial." *Id.*

A court which can look to the evidence to find harmless error should be able to look to the record to determine whether the offense charged is in law and fact a specific-intent offense.[3] Not to do so is to appear to apply a double standard.

There are indeed some offenses *(e.g.,* common-

[3] In *United States v Nix,* 501 F2d 516 (CA 7, 1974), the Court of Appeals held that the crime of escape included a mental element which voluntary intoxication could negate. In reaching that conclusion, the court quoted from *Intoxication as a Criminal Defense,* 55 Colum L Rev 1210, 1218 (1955):

"Categorizing all crimes as either having 'general' or 'specific' intent seems too mechanical and often forecloses evaluation by the court of the important consideration involved, *i.e.,* what elements are involved in the crime and whether the prosecution has satisfactorily established them."

law rape, see part II *infra)* which have not been deemed to include an element of specific intent. It is *not* asserted that second-degree murder is such an offense. The intents to kill or to inflict great bodily harm are specific intents. It cannot thus properly be said that second-degree murder does not include a specific intent. It can only be said that a person may—in some other case—be convicted of second-degree murder without a finding of specific intent upon a finding of wanton and willful disregard.

To be sure, the intoxication defense deserves legislative consideration. Until the Legislature acts, we should apply the judicially crafted specific-general-intent distinction on a reasoned basis. We should not ignore that where second-degree murder is charged, the people's theory is almost universally intent to kill or to inflict great bodily harm and only rarely if ever willful and wanton disregard. It is hypertechnical to classify second-degree murder, which has "intent to" elements, as a general-intent crime because in a rare case a person might be convicted on a theory of willful and wanton disregard.

In the instant case, the prosecution did not claim willful and wanton disregard. The people rather introduced evidence tending to show that Langworthy killed with premeditation, deliberation, and malice. The judge found "that the defendant consciously and knowingly shot the deceased intending to kill him". Langworthy was thus convicted on the basis of specific intent to kill, and voluntary intoxication should be a defense.[4]

---

[4] See *State v Saunders,* 102 Ariz 565, 568; 435 P2d 39, 42 (1967), quoting *State v Hudson,* 85 Ariz 77; 331 P2d 1092 (1958), in which defendant's conviction of second-degree murder was reversed:

"[W]hile mere drunkenness does not excuse an offense it may produce a state of mind in the accused which incapacitates him from

## II

In *Lundy,* the judge declared that "criminal sexual conduct first degree * * * involves general intent and that voluntary intoxication or sniffing glue * * * is not an excuse of the offense".

The general- specific-intent distinction is a formalistic one which turns on whether an "intent to" is an element of the offense. Specific-intent crimes include larceny, because an element of the offense is felonious intent to deprive the owner permanently of his property; robbery, because it is larceny with force; first-degree murder, because the malice must be express (intent to kill or to do great bodily harm); burglary, because intent to commit a felony is an element.[5]

The definition of common-law rape did not articulate a specific intent. Rape was the carnal knowledge of a woman by force and against her will.[6] Because the common-law definition did not in so

forming or entertaining a malicious intent or that 'malice aforethought' which is an essential element of murder in the second degree. Such voluntary intoxication or drunkenness is to be taken into consideration in determining the existence or non-existence of malice aforethought, which distinguishes murder from manslaughter".

In *People v DeMino,* 277 AD 1121; 100 NYS2d 982, 983-984 (1950), the Appellate Division of the New York Supreme Court, Second Department, said:

"Evidence was adduced on the trial that appellant had been drinking, and the jury might have concluded therefrom that he was intoxicated at the time of the commission of the crime. Under such circumstances it was error to refuse to charge the substance of section 1220 of the Penal Law, which would have permitted the jury to consider such evidence as bearing on appellant's intent to kill."

It appears that in New York specific intent to kill is an essential element of second-degree murder.

[5] See *People v Kelley,* 21 Mich App 612; 176 NW2d 435 (1970); *People v Garcia,* 398 Mich 250, 259; 247 NW2d 547 (1976).

[6] Perkins, Criminal Law (2d ed), p 152; Clark & Marshall, Crimes (7th ed), § 11.01, p 752.

many words describe a particular intent, rape was generally regarded as a general-intent crime.

The Legislature has now repealed the common-law offense and substituted its own definitions in painstaking detail. The common-law definition of rape, therefore, is no longer the law of this state. We now must determine, as a matter of statutory construction, whether the *statutory* definitions encompass an element of specific intent.

We would construe the provision of the statute establishing the offense of first-degree criminal sexual conduct as requiring a specific intent because that appears to be the most reasonable construction of the statute read as a whole.

The critical words in the statute are "sexual contact" and "sexual penetration". The definition of "sexual contact" manifestly requires a specific intent:

" 'Sexual contact' includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." MCL 750.520a(g); MSA 28.788(1)(g).

While the definition of "sexual penetration" does not explicitly state a specific intent:

" 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(h); MSA 28.788(1)(h),

this was apparently because non-intentional pene-
tration is unusual and it would therefore have
been supererogatory to spell out "intentional" as
part of the definition of penetration.

Given the structure of the statute, we would
construe the statutory definition of "sexual pene-
tration" as requiring the intent to penetrate. Not
to so construe the statute would, somewhat anoma-
lously, mean that persons who, without specific
intent, "sexually penetrate" are fully criminally
responsible although those who, without specific
intent, "sexually contact" are free of criminal
responsibility.[7] Moreover, as one author put it,
speaking of the common-law offense, "the actual
intention in rape is as specific as can be imag-
ined".[8]

Because the statutory offense of first-degree
criminal sexual conduct requires the specific intent
to penetrate,[9] and because voluntary intoxication
is a defense to specific-intent crimes, the judge

[7] The effect of the distinction is to free from criminal responsibility
those who sexually "contact" without specific intent, because intoxi-
cated or narcotized, but to hold fully responsible those who sexually
"penetrate" albeit in the same beclouded state of mind.

[8] Hall, General Principles of Criminal Law (2d ed, 1960), p 143.

[9] See LaFave & Scott, Criminal Law, § 45, pp 343, 344:

"One is not guilty of rape, or assault with intent to rape, if he is
intoxicated to such an extent that he is unable to entertain the intent
to have sexual intercourse.

*   *   *

"It is sometimes stated that intoxication can negative a 'specific
intent' which the crime in question may require (meaning some
intent in addition to the intent to do the physical act which the crime
requires), but it cannot negative a crime's 'general intent' (meaning
an intent to do the physical act—or, perhaps, recklessly doing the
physical act—which the crime requires). Some cases therefore have
held that voluntary intoxication cannot be a defense to rape even
though it blots out the intent to have intercourse, since that intent is
a general intent and not a specific intent. But this is wrong on
principle, for if intoxication does in fact negative an intention which
is a required element of the crime (whether it be called specific intent
or general intent), the crime has not been committed." (Footnotes
omitted.)

erred in not considering whether Lundy was intoxicated to such an extent as to negative the mental element of intent.

### III

Robberies and burglaries, most often committed by persons who have a history of criminal behavior and generally planned in advance of their commission, are specific-intent crimes. The defense of voluntary intoxication may thus be interposed by the predatory drunk who commits a planned robbery or burglary.

Most murders and a significant percentage of .sexual offenses are committed by persons who have no history of predatory crime and who act impulsively in an agitated and, if intoxicated, a beclouded state of mind. Assuming that there is justification for a defense of voluntary intoxication, a rational legal system would allow a person who has no prior criminal history, but loses control while intoxicated, to raise the defense, at least in mitigation, if it allows a person who has a history of predatory behavior to do so. While it appears that, in the instant cases, the defendants may have prior histories of predatory offenses, the rule which this Court announces in these cases will apply in a substantial number of cases in which the defendant does not.

We would reverse and remand for new trials.

KAVANAGH, J., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.