# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LEON ALLEN LINES,

        Defendant-Appellant.

UNPUBLISHED
July 19, 2018

No. 336453
St. Clair Circuit Court
LC No. 16-001722-FC

Before: CAMERON, P.J., and JANSEN and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals his convictions for sexually assaulting his girlfriend's daughter. He was convicted by jury of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of a child under 13 by an individual 17 years of age or older), one count of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a); MCL 750.520c(2)(b) (sexual contact with a child under 13 by an individual 17 years of age or older), one count of engaging in child sexually abusive activity, MCL 750.145c(2), and one count of possession of child sexually abusive material, MCL 750.145c(4). Defendant was sentenced to consecutive sentences of 25 to 50 years' imprisonment for each first-degree criminal sexual conduct conviction, and concurrent sentences of 10 to 15 years' imprisonment for the second-degree criminal sexual conduct conviction, 160 months to 20 years' imprisonment for the child sexually abusive activity conviction, and 32 months to 4 years' imprisonment for the child sexually abusive material possession conviction. Defendant claims he was denied a fair trial because the trial court: (1) denied his request for a lesser included offense instruction, and (2) admitted the victim's statements for the purpose of medical treatment. Defendant further alleges he is entitled to resentencing because the trial court improperly scored the guidelines. We disagree and therefore affirm.

Defendant argues that the trial court erred when it denied his request for an instruction on assault with intent to commit criminal sexual conduct involving penetration as a necessarily lesser-included offense to the three charges of first-degree criminal sexual conduct. Defendant relies upon *People v Nickens*, 470 Mich 622; 685 NW2d 657 (2004), to argue that before a defendant can commit first-degree criminal sexual conduct, he or she initially commits an attempted-battery assault with the intent to commit criminal sexual conduct involving sexual penetration. Defendant contends that because the victim was legally incapable of consenting to sexual penetration due to her young age, the attempted-battery assault was necessarily committed

-1-

using force or coercion, and he was therefore entitled to an instruction on the lesser-included offense of assault with intent to commit criminal sexual conduct involving penetration. We disagree.

"We review a claim of instructional error involving a question of law de novo. . . ." *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017) (quotation marks and citation omitted). A claim of whether an offense is a necessarily included lesser offense is a question of law that this Court reviews de novo. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010).

MCL 768.32(1) governs the trial court's authority to instruct the jury on lesser included offenses and provides:

> Except as provided in subsection (2), upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (citation omitted). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). A necessarily included offense is where "all the elements of the lesser offense are included in the greater offense[.]" *Nickens*, 470 Mich at 626, 632 (quotation marks and citation omitted). "An appellate court must . . . review *all* of the evidence irrespective of who produced it to determine whether it provides a rational view to support an instruction on the lesser charge." *People v McMullan*, 488 Mich 922, 922; 789 NW2d 857 (2010). A defendant is only entitled to an instruction on the lesser included offense if that lesser offense is necessarily included in the greater offense, i.e., if it is "impossible to commit the greater offense without first committing the lesser offense." *Cornell*, 466 Mich at 361.

MCL 750.520b(1)(a) provides, "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if . . . [t]hat other person is under 13 years of age." See *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014). Defendant was convicted under MCL 750.520b(2)(b), which mandates that the violation be committed by an individual 17 years of age or older. Further, first-degree criminal sexual conduct is a general intent crime. See *People v Nyx*, 479 Mich 112, 117-118; 734 NW2d 548 (2007); *People v Langworthy*, 416 Mich 630, 643, 653; 331 NW2d 171 (1982).

Comparatively, "the elements of assault with intent to commit CSC involving penetration are simply (1) an assault, and (2) an intent to commit CSC involving sexual penetration." *Nickens*, 470 Mich at 627; see MCL 750.520g(1). "An assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *Nickens*, 470 Mich at 628 (quotation marks and citations

omitted). "[A]ssault with intent to commit CSC involving sexual penetration may be viewed as a specific intent crime." *Id*. at 631.

*Nickens* involved a defendant charged with first-degree criminal sexual conduct under MCL 750.520b(1)(f), which requires a showing of force or coercion. See *Nickens*, 470 Mich at 624. Here, however, defendant was charged with age-based first-degree criminal sexual conduct under MCL 750.520b(1)(a). Under MCL 750.520b(1)(a), an individual could unintentionally or accidentally commit first-degree criminal sexual conduct by engaging in sexual penetration while lacking knowledge of the victim's age. See *People v Cash*, 419 Mich 230, 241-242; 351 NW2d 822 (1984) (concluding that there is no "reasonable mistake of age" defense in a CSC prosecution involving a victim within a protected age group and that such offenses do not require specific intent, but instead the "perpetrator proceed[s] at his own peril regardless of his defense of ignorance or an honest mistake of fact."). Because there is "no circumstance in which an actor could unintentionally or accidentally use force or coercion to sexually penetrate his victim," defendant's reliance on *Nickens* is misplaced, and the trial court did not err when it denied defendant's request for an instruction on assault with intent to commit criminal sexual conduct involving penetration as a necessarily lesser-included offense to the three charges of first-degree criminal sexual conduct. *Nickens*, 470 Mich at 631.

Defendant next argues that the trial court abused its discretion in admitting the testimony of the victim's examining nurse, Kathleen Hupp, regarding the victim's identification of defendant as the perpetrator of her sexual abuse because his identity was not necessary to the victim's medical treatment. We disagree.

"[W]e review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014), citing *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). See also MRE 802 ("Hearsay is not admissible except as provided by these rules."). "Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). "[S]upporting rationale[s] for MRE 803(4) are the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). "Particularly in cases of sexual assault," "a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Mahone*, 294 Mich App at 215.

"[T]he identification of the assailant is necessary to adequate medical diagnosis and treatment." *Meeboer*, 439 Mich at 322. Statements by a child identifying their assailant "may be

necessary where the child has contracted a sexually transmitted disease," and "may also be reasonably necessary to the assessment by the medical health care provider of the potential for pregnancy," pregnancy-related genetic issues, and delayed onset diseases such as acquired immune deficiency syndrome (AIDS). *Id*. at 328. Further,

> [d]isclosure of the assailant's identity also refers to the injury itself; it is part of the pain experienced by the victim. The identity of the assailant should be considered part of the physician's choice for diagnosis and treatment, allowing the physician to structure the examination and questions to the exact type of trauma the child recently experienced. [*Id*. at 329.]

Additionally, the psychological effects of sexual abuse must be "recognized as an area that requires diagnosis and treatment." *Id*. The assailant's identity allows medical health care providers to "prescribe the manner of treatment, especially where the abuser is a member of the child's household." *Id*. Finally, a medical health care provider "should also be aware of whether a child will be returning to an abusive home." *Id*. Such information "is not needed merely for 'social disposition' of the child, but rather to indicate whether the child will have the opportunity to heal once released from the hospital." *Id*. at 329-330.

The victim's statements to Hupp were reasonably necessary for her diagnosis and treatment. Before the exam, Hupp spoke with the victim's mother and obtained the victim's medical history and background information regarding the allegations. Hupp began her examination of the victim by having her lay down on her back to examine her genital area. As Hupp was swabbing the victim's labia majora, the victim made several statements regarding the assault. Hupp recorded the victim's statements, and provided the following testimony:

> [I]n the exam room [the victim] said [defendant] was rubbing my private parts with his hand. He was kissing my lips and private parts. [The victim] pointed to her labia majora. [Defendant] put his finger in my butt and tried to put his thing and I asked her what that meant and I asked her, you know, cause we have the genitalia she said the penis. She didn't say the word penis but she referred to a picture of a penis in my butt. [Defendant] told [the victim] that mommy would yell at [her] if [her mother] knew so . . . it was our secret.

Hupp testified that the victim's statements to Hupp were important to her diagnosis of physical conditions because "based on what [the victim] told [Hupp]," Hupp knew "to look a lot closer at [the victim's] butt area" and helped Hupp determine the degree of the victim's injury. Moreover, the victim's statements assisted Hupp in determining that further medical treatment was unnecessary. That is, Hupp indicated that "[h]ad the injuries been to the point where . . . they were bleeding very badly," the victim would have been directed to the emergency room. Instead, Hupp directed the victim's mother follow up care to be handled by a pediatrician the next day and the use of soap, water, and Neosporin antibiotic ointment on the victim's injuries. Further, the victim's statements contributed to Hupp's referral "to Children's Hospital or through her pediatrician for medications if needed for sexually transmitted diseases and HIV." The victim's statements were reasonably necessary for her diagnosis and treatment.

Defendant also contends that because of the victim's young age, the statements to Hupp were inadmissible. We disagree.

"[S]tatements [a] child makes may be admitted under [MRE 803(4)] when the totality of circumstances surrounding the statements supports that they are trustworthy." *Duenaz*, 306 Mich App at 95. In order to determine the trustworthiness of a child victim's statements to a medical professional, this Court reviews those statements in light of the relevant factors articulated in *Meeboer*, 439 Mich at 324-325:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [Citations omitted.]

Additionally, "evidence that the person identified as the assailant had the opportunity to commit the assault" can also "support the trustworthiness of the child's statements regarding a sexual assault and aid in the determination whether the statement was made for the purpose of receiving medical care." *Id*. at 326.

The victim's statements are trustworthy. She was seven years old when she was examined, and her statements to Hupp described the circumstances of the sexual assault. Based on the record, the victim's statements were made spontaneously during Hupp's examination of the labia majora and do not appear to have been elicited by Hupp through direct questioning. She told Hupp that defendant was rubbing her private parts with his hand and kissing her lips and private parts. Hupp indicated that the victim then pointed to her labia majora after making these statements. She also described that defendant inserted his finger in her butt and tried to put his "thing" inside her butt. When Hupp asked for clarification about what "thing" meant, she "didn't say the word penis but [] referred to a picture of a penis" and said that defendant tried to put it in her butt. Further, the police told the victim's mother to take the victim to the hospital. The hospital, not the police, directed the victim to Turning Point, which then initiated the examination. Moreover, the sexual assault examination occurred almost immediately after the assault, and the victim's hospital visit took place approximately four months before trial. Hupp examined the victim "from head to toe." Therefore, the examination was not psychological. The close relationship between defendant and the victim further supports the statements' trustworthiness. The victim knew defendant for approximately two and a half years; indeed, they had lived in the same house. Finally, no evidence was presented that the victim had a motive to fabricate her statements to Hupp. The victim testified that she did not know defendant's actions were wrong because "you're supposed to believe a parent." Further, she indicated that she asked

defendant to help put her to sleep on the night at issue because she sometimes got scared. Her testimony indicates that she viewed defendant as a father figure. In light of the relevant factors articulated in *Meeboer*, 439 Mich at 324-325, the totality of the circumstances supports that the victim's statements to Hupp are trustworthy. Therefore, the trial court did not abuse its discretion in admitting the statements under MRE 803(4).

Defendant next asserts that because his conviction for first-degree criminal sexual conduct carried a mandatory minimum sentence of 25 years, the trial court should have calculated his sentencing guidelines range using the next highest crime class. Defendant has abandoned this issue and, therefore, we may decline to address it.

"An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Johnson*, 315 Mich App 163, 199; 889 NW2d 513 (2016), quoting *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (citation and quotation marks omitted).

Defendant's brief provides citation to only one case, *People v Mack*, 265 Mich App 122, 128; 695 NW2d 342 (2005), for the proposition that "MCL 771.14 requires that it is only necessary to calculate the sentencing guidelines for the highest crime class conviction." Although defendant argues that the trial court improperly calculated the guidelines utilizing defendant's first-degree criminal sexual conduct convictions, defendant does not provide further analysis or citation to authority that supports his argument. Therefore, defendant has abandoned this issue on appeal. See *Johnson*, 315 Mich App at 199.

Regardless, MCL 769.34(5) provides that "[i]f a crime has a mandatory determinant penalty or a mandatory penalty of life imprisonment, the court shall impose that penalty" and the sentencing guidelines do not apply. By way of example, felony-murder is a crime that is not covered by the guidelines because it carries a mandatory penalty of life imprisonment. See MCL 750.316(1); see generally MCL 777.16a-19 (enumerating the felonies to which the sentencing guidelines apply). Moreover, carrying or possessing a firearm when committing or attempting to commit a felony (felony-firearm) is yet another crime not covered by the guidelines because it carries a mandatory determinant sentence of two years' imprisonment. See MCL 750.227b; 777.16m (demonstrating that MCL 750.227b is not an enumerated felony for purposes of the sentencing guidelines). In comparison, first-degree criminal sexual conduct is an offense that can be scored under the sentencing guidelines, see MCL 777.16y, and does not provide for a mandatory determinant penalty of life imprisonment, MCL 750.520b(2)(b). Although felony-murder provides for mandatory life imprisonment and felony-firearm provides for a mandatory two years' imprisonment, MCL 750.520b(2)(b) provides that "[f]or a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age," the perpetrator shall be punished "by imprisonment for life or any term of years, but not less than 25 years." That is, unlike felony-murder and felony-firearm, which have defined terms of imprisonment, first-degree criminal sexual conduct under these facts only has a minimum sentence. The outer range of defendant's sentence is nondeterminant, i.e., the trial court could

assign any term of years to the end of defendant's sentence.[1]  Because this issue is unpreserved, we review it for plain error affecting defendant's substantial rights.  *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).  Based on the foregoing, the trial court did not plainly err in using the first-degree criminal sexual conduct conviction to calculate defendant's minimum guidelines range such that it affected defendant's substantial rights.  *Id*.

Defendant next argues that the trial court erred when it assessed 15 points for OV 8 because the record did not support the allegation that defendant moved the victim from one room to another.  Defendant further asserts that "[n]one of the rooms were a place of greater danger than any other rooms."  We disagree.

"Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence."  *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015), citing *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).  "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred."  *McChester*, 310 Mich App at 358 (citation and quotation marks omitted).  "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo."  *Hardy*, 494 Mich at 438.

OV 8 addresses victim asportation or captivity.  MCL 777.38(1).  Under OV 8, the trial court must assess points to the situation, with the highest number of points, applicable to the offense.  *Id*.  The trial court must assess 15 points for OV 8 where "[a] victim was asported to another place of greater danger or to a situation of greater danger *or* was held captive beyond the time necessary to commit the offense."  MCL 777.38(1)(a) (emphasis added).  However, the trial court must assess zero points where "[n]o victim was asported or held captive."  MCL 777.38(1)(b).  " 'A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial.' "  *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012), quoting *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993).

The record evidence supports a score of 15 points for OV 8.  The PSIR indicates that the assaults occurred when defendant and the victim would "go into a bedroom or another room."  Further, the PSIR provides that the victim "was asked to detail what had gone on [the night at issue] and she started by saying that . . . defendant brought her to her bed and had her sit on his lap with her lying down on her back and he took off her pants and underpants."  Moreover, the PSIR provides that defendant had a blanket over the victim, "forcing her to stay under it to 'hide' " while he assaulted her.  The PSIR also indicates that defendant assaulted the victim in defendant's bedroom, "her own bedroom, the living room, the basement, and a secondary area in the basement adjacent to the main room, however, separated by a wall to hide from her mother in case she were to come downstairs."  At trial, the victim testified that defendant touched her after

---

[1] So long as the sentence satisfies the two-thirds rule set forth in *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972).

directing her six-year-old brother to go to his bedroom, when her brother was in another room, when her mother was at the store, or when her mother and brother "went to a restaurant or something." Coupling the information from the PSIR with the victim's testimony at trial, the record evidence supports a score of 15 points for OV 8. Defendant took the victim into a bedroom or another room in order to assault her, including on the night of June 19, 2016, into June 20, 2016. Further, because asportation can be established where the victim is moved away from the observation of others, *Chelmicki*, 305 Mich App at 70-71, the movement of the victim to an area in the basement separated by a wall in order to assault her is sufficient to support a score of 15 points for OV 8.

Defendant argues that the trial court erred in assessing 15 points under OV 10 for predatory conduct. Rather, defendant contends that OV 10 should have been assessed 10 points in light of his exploitation of her young age. We disagree.

OV 10 considers predatory conduct against a vulnerable victim. MCL 777.40. With respect to OV 10, our Supreme Court has concluded that

> to assess 15 points for OV 10, a court must find that an offender engaged in predatory conduct and exploited a vulnerable victim, using only the statutory definition of "vulnerability." Again, MCL 777.40(3)(c) defines "vulnerability" as the "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation," and such vulnerability may or may not arise from the explicitly listed characteristics, relationships, and circumstances set forth in subdivisions (b) and (c). The statute does not mandate that this "susceptibility" be inherent in the victim. Rather, the statutory language allows for susceptibility arising from external circumstances as well. [*People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011).]

Moreover, MCL 777.40(3)(a) defines "predatory conduct," in relevant part, as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." Predatory conduct includes "only those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature . . . as opposed to purely opportunistic criminal conduct or 'preoffense conduct' involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *Huston*, 489 Mich at 462. For the trial court to find that a defendant engaged in predatory conduct, it must conclude that (1) "the offender engage[d] in conduct before the commission of the offense," (2) the conduct was "directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation," and (3) "the offender's primary purpose for engaging in the preoffense conduct" was victimization. *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008). Evidence of the timing and location of an offense is sufficient to establish predatory conduct. *People v Kosik*, 303 Mich App 146, 160; 841 NW2d 906 (2013).

The evidence establishes that defendant engaged in predatory conduct before he sexually abused the victim; therefore, OV 10 was properly assessed 15 points. Defendant waited to commit his abuse of the victim until no one was around or after he had directed the victim's younger brother to another room. See *id*. Defendant moved the victim to rooms that were out of sight from others, thus allowing him to commit the abuse and reducing the likelihood that he

would be caught. See *id*. On the night defendant was caught, he forced her to hide under a blanket before he began assaulting her to better conceal his actions. Defendant's conduct was not merely "opportunistic criminal conduct," but rather was directed at the victim, his girlfriend's seven-year-old daughter, who looked to him as a father and trusted him as one would a parent. *Huston*, 489 Mich at 462. Thus, in light of her age and her relationship to defendant, the victim was particularly vulnerable and susceptible to persuasion. *Cannon*, 481 Mich at 161-162. Finally, defendant's primary purpose in engaging in the preoffense conduct was to allow him to commit the assaults upon the victim with a reduced risk of being caught. Therefore, the trial court did not clearly err in finding that defendant's conduct warranted a 15 point score for OV 10. Thus, defendant is not entitled to resentencing.

Finally, to the extent that defendant appears to argue that his sentence was unreasonable and disproportionate, this argument is abandoned.

The portion of defendant's brief dedicated to whether his sentence is reasonable and proportionate simply provides citation to one case, *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and no argument. Therefore, defendant has abandoned this issue on appeal, and we decline to address it. See *Johnson*, 315 Mich App at 199. Even so, defendant's sentence is within the guidelines range and is, therefore, presumed proportionate and must be affirmed on appeal absent a scoring error or reliance upon inaccurate information. MCL 769.34(10); *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017); *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016).

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Peter D. O'Connell